### George McMillan v. The State.

#### No. 1264.   Decided February 14, 1912.

**1.—Murder—Continuance—Practice on Appeal.**

Where the judgment is reversed and the cause remanded on other grounds, the refusal of the application for continuance need not be considered.

**2.—Same—Argument of Counsel—Requested Charge.**

Where the court had overruled defendant's application for a continuance for an absent witness, the State had no right to offer the stenographic report of the testimony of said witness without first admitting that it was true, and the argument of State's counsel with reference thereto, and the refusal of the court to submit a requested charge withdrawing said remarks was reversible error.

**3.—Same—Evidence—Other Transactions.**

Where, upon trial of murder, it was a question in the case as to whether defendant or the deceased began the difficulty which grew out of a certain election, the court should have admitted testimony to the effect that a week or ten days prior to the difficulty between them, the deceased remarked with reference to the election that matters were getting warm and that a good many were getting "raw," naming defendant as one of them, and that they would likely be trouble over the matter; the evidence showing that the defendant and deceased were on opposite sides of the question involved in said election.

**4.—Same—Evidence—Acts and Declarations of Third Parties.**

Where, upon trial of murder, the State could show that an altercation occurred between the defendant and a third party just prior to the homicide, to show the mental status of the defendant with reference to the election out of which the homicide arose, yet details of said prior altercation and the words used between defendant and said third party were not admissible.

Appeal from the District Court of Baylor.   Tried below before the Hon. Jo A. P. Dickson.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Glasgow & Kenan, Coombs & Coombs, Stevens & Brookerson & Cunningham,* for appellant.—On the question of the argument of counsel: Crawford v. State, 15 Texas Crim. App., 501; Davis v. State, 15 id., 594; Tilley v. State, 24 id., 251; Laubach v. State, 12 id., 583; Greene v. State, 17 id., 395.

On question of refusing testimony of deceased's declarations sometime prior to the difficulty: Allen v. State, 24 Texas Crim. App., 216; Howard v. State, 23 id., 265; Logan v. State, 17 id., 50; Potts v. State, 29 id., 374.

On question of admitting testimony as to details of conversation between defendant and third party: Brown v. State, 54 Texas Crim. Rep., 121, 112 S. W. Rep., 80; Gardner v. State, 55 Texas Crim. Rep., 400, 117 S. W. Rep., 148.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—This is the second appeal of this case, the first one being reported in 58 Texas Crim. Rep., 525.

The facts are in some particulars different from what they were on former appeal, but we deem it unnecessary to make a statement of those facts except in reference to the charge on provoking a difficulty, which will be taken up later in the opinion.

1. An application for a continuance by appellant was refused by the court. This was sought for the testimony of E. R. Brown, who was shown to be a very important witness as to material matters and was present at the time of the difficulty and assisted in separating the parties. The refusal to grant the continuance will not be discussed in view of the disposition of the case, and is mentioned because of the matters growing out of another bill of exceptions.

2. While Mr. Ellerd, private counsel for the State, was making an argument, the bill recites the State offered in evidence the stenographic report of the testimony of the witness Brown on a former trial of the case. To this appellant objected, and the court sustained his objection; that the said E. R. Brown is a man of good bearing and makes a favorable impression of truthfulness on the jury and defendant sought his personal appearance before the jury by said application for a continuance, which was overruled; that the State, in offering the stenographic report of Brown's testimony, did not offer to admit the truth of the facts set forth in the application for continuance. That during the further progress of the trial counsel for the defendant stated to the jury that the defendant had produced the knife and challenged the State to produce the poker, which was testified to by the witnesses as used by deceased. That in answer to said argument Mr. Ellerd used in the presence of the jury the following language: "Mr. Cunningham, the defendant's counsel, wants us to produce the poker and because we can't do it, tries to leave the impression upon you that the State is suppressing testimony, but gentlemen, you know that is not true; the defendant asked for a continuance because of the absence of E. R. Brown and we offered the testimony of said witness as shown by the stenographer's report of a former trial and defendant's counsel objected, and it is shown that he was an eyewitness and the defendant wouldn't let his testimony go before the jury." Objections were urged

to these remarks at the time they were made, and the court requested to reprimand counsel therefor and instruct him to refrain from making such argument. This the court refused to do, thereupon the defendant presented to the court his special charge No. 8, and requested the court to give the same to the jury that said argument should be disregarded, and the court refused. The special charge is as follows:

"You are instructed as a part of the law in this case that you will disregard the remarks of R. M. Ellerd that the State had offered the testimony of the witness E. R. Brown and that the defendant objected for the reason that the same was improper and not to be considered as a circumstance against the defendant."

This should not have occurred, and upon another trial this should be avoided. The court had overruled the application for a continuance for Mr. Brown, and appellant assigns that as error and reserved a bill of exceptions. The State had no right to offer the stenographic report of the testimony of the absent witness either to defeat the application or for any other purpose before the jury or the court, unless he had first admitted that the facts stated in the application were true. The remarks of counsel were in nowise germane or incidental to or connected with the statement of defendant's counsel that they had produced the knife and the State had not produced the poker. The knife used by appellant in the difficulty was produced and evidence fully detailed as to its length and size. It is a matter of considerable testimony as to the size of the poker and what became of it after the difficulty. It was seen immediately after the difficulty, that is, just at the close of the difficulty, and the witnesses say it was never seen afterward. There was no attempt to show that the defendant did away with the poker. The State could not either before the court or the jury meet the action of the trial court in refusing to continue the case by offering the evidence of the absent witness, unless they would admit its truth. Defendant could not be charged in this way with having suppressed testimony or kept away testimony when he was doing his utmost through the process of law to have the witness in attendance and denied that right.

3. Another bill recites defendant offered the testimony of A. P. Oliver to the effect, in substance, that a week or ten days prior to the difficulty between the defendant and deceased, that he heard the deceased make in the presence of several parties, among them Earnest Brock, who was in attendance upon the court, and in his deceased's place of business, that the Bailey question was getting warm and that a good many of them were getting pretty raw, specified defendant as one of the number, and that there would likely be trouble over the matter. This was offered for various and sundry reasons to show the state of mind of deceased towards defendant, that he knew defendant's position with reference to the Bailey question, that it would shed light upon the taunt which deceased made toward the defendant immediately prior to

the fight and at its inception which brought on the difficulty, and it served to explain why deceased flew into a rage when defendant mocked his whistling and struck the defendant over the head with a poker; that he knew the defendant or believed that the defendant was "*raw*" on the Bailey question, and that he could easily provoke him into a difficulty; that defendant was one of the parties, from language used by the deceased, with whom he was going to have trouble. It was offered also for the purpose of shedding light upon the transaction with reference to the bulletin board on Saturday night prior to the difficulty when Mr. Bailey's adherents placed on the board very offensive and insulting language, and also as throwing light upon the transaction and conduct of the parties at the time and immediately before the difficulty, etc. This testimony should have been admitted under the authorities. It was a question of some moment as to who began the difficulty, the weight of the evidence indicating that the deceased initiated it by some remarks he made with reference to the Bailey question, the defendant being an anti-Bailey man and the deceased a warm adherent of Mr. Bailey. It was on Monday night after the election of delegates at large in the State between Mr. Bailey and his friends on one side and Mr. Cone Johnson and his friends on the other. The returns were coming in. The discussions about the matters were a little warm. The parties became agitated and said some ugly things about each other. In this condition of things the deceased made a remark which attracted the attention of appellant, who was reading a newspaper. Appellant immediately looked in the direction of where the deceased was, and the deceased began whistling in such way as to be insulting to him. He said it was a sort of blowing whistle which he could not describe, but to his mind was intended as an insult to him. He stepped over in the direction of where the deceased was, and from this point on the evidence is conflicting as to who struck the first lick, and what was done before the first lick was struck. Some of the evidence for the State indicates that defendant struck the deceased with a paper. Some of the evidence is to the effect that this was not seen by the witnesses testifying, but that defendant did mock deceased, trying to whistle like deceased was whistling, and that deceased told him if he repeated it he would hit him. That he did continue to whistle and deceased got the poker that was used about the stove and began beating him with it, and that wounds were inflicted on the head, producing both pain and bloodshed, and the blood flowed very freely, getting into defendant's eyes, so much so that some of the evidence shows after he got out his knife it was with difficulty he could see how to use it. If the threat of the deceased was communicated to defendant, and it was a veiled threat, then it was admissible under all the authorities as bearing directly upon the law of self-defense. If it was not communicated, then it was clearly admissible in regard to the question as to who began the difficulty. So, viewed from any standpoint, this testimony was clearly admissible.

4. There was another bill of exceptions reserved to the details of

a spirited conversation occurring between the defendant and the witness Alexander. Late in the evening, at the hotel, defendant walked into the lobby of the hotel and Alexander was reading a newspaper. Something was said between them in reference to the majority of Mr. Bailey over Cone Johnson. The conversation got a little warm between Alexander and defendant, but it subsided and appellant went away to another part of the lobby, and was looking over his newspaper. It is unnecessary, we think, to mention the details of the conversation between Alexander and appellant. The exception was reserved to it on the theory and, ground that deceased was not a party to it and knew nothing about it, and was not present and it had no reference to deceased, and he was not in anywise connected with it. We suppose that the court admitted this to show the mental status of the defendant at the time the trouble came up between himself and deceased. The condition of the defendant's mind may be legitimate testimony in this connection, because the Bailey matter was what brought up the unfortunate trouble, but to let in the details of a heated conversation in which ugly words were used between Alexander and defendant, where the deceased was in nowise connected with it, we think, was not permissible. The condition of the defendant's mind growing out of the trouble with Alexander could have been shown without going into and repeating all that occurred between them. We are of opinion, however, that the fact that appellant's mind was agitated about the Bailey matter at the time that deceased brought up the subject, is a legitimate inquiry. It might tend to show that his mind was in such condition it would be more easily offended than it would had the quarrel not ensued, and it would also tend to show that his mind was not calm and deliberate, or at least it was in such condition that it might be more easily excited. There was perhaps but a few minutes intervening between the controversy between Alexander and defendant and the difficulty between defendant and deceased. Upon another trial if this matter is gone into we are of opinion all of the details of the conversation between Alexander and defendant should not go to the jury.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*