ED PORTER v. THE STATE.

No. 15022.    Delivered May 4, 1932.

The opinion states the case.

*Johns, McCampbell & Snyder,* of Corpus Christi, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for ninety-nine years.

It was charged in the indictment that appellant, with malice aforethought, killed Ed. Lawson by shooting him with a gun.

The parties involved are negroes. Appellant and his wife had had some trouble and she had gone to the home of deceased's wife. Appellant followed her there and was ordered away by deceased's wife. According to the testimony of the wife of deceased, appellant cursed and abused her when she ordered him away. Appellant denied that he was guilty of any unbecoming conduct. Later deceased took appellant to task for com-

ing to his home and insulting his wife, saying to appellant that he wanted him to apologize to his wife. Touching the facts and circumstances immediately surrounding the homicide, witnesses for the state testified, in substance, that appellant was standing near his door talking to deceased; that deceased turned and walked across the street away from appellant's house; that appellant procured a shotgun and fired several shots at deceased after he had gotten across the street; that deceased fell, mortally wounded; that appellant then walked up to where deceased was and shot him again. The testimony of the state was to the further effect that deceased was unarmed.

Appellant testified, in substance, as follows: After he had gone to deceased's home in search of his wife he next saw deceased in the freight depot where he was working. Deceased had a pistol. He asked one of the men in the depot to have deceased leave the place, which he did. Before leaving, deceased said to him: "I heard you had been down to my house and I didn't like it a damn bit." Deceased said further that he would settle it with appellant at twelve o'clock. At twelve o'clock he saw deceased again and deceased said to him: "G— d— you, if it wasn't for me losing my job I would blow your G— d— brains out up here." Deceased said further that he would meet him at his home, and, in effect, that appellant had better be ready to meet him at that time. Deceased later came to appellant's home, saying that he had come there to settle the argument with him. He told deceased that he was not going to settle any argument, and deceased said: "I ought to shoot you." He said deceased said further: "You G— d— s— of a b— when you come out I will be out here waiting for you." When he later left the house he saw deceased standing there with his hand on his pistol. His shotgun was behind the door and he reached down and got his gun and brought it up to his shoulder. Deceased whirled and made a demonstration as if to draw his pistol, saying: "I have got you now." He commenced shooting at deceased in an effort to protect himself. He did not know how many shots he fired. Deceased was across the street from his house when he first shot at him. He went toward the jail for the purpose of surrendering. Upon meeting the sheriff he told him that he had had a fight with deceased and had shot him, but did not know how many shots had taken effect.

Bill of exception No. 1 relates to the action of the court in explaining certain propositions of law to the jurors on their voir dire examination. It is appellant's contention that the statements made by the court embraced incorrect propositions of law, and that he, in effect, gave a verbal charge to the jury in advance of the trial of the case. In view of the fact that the matter is not likely to arise in another trial, we pretermit a discussion of the question.

Over proper objection, as shown by bill of exception No. 3, the sheriff

of Kleberg county was permitted to testify that appellant stated to him at the time he surrendered that he had shot deceased in the back of the head. The objection was that appellant was under arrest at the time the conversation was had with the sheriff; that it was no part of the res gestae of the offense; and that it was not reduced to writing after warning in compliance with article 727, C. C. P. We think the bill of exception excludes the idea that the statement made to the sheriff was res gestae. Further, the bill shows that the statement was not taken in compliance with article 727, C. C. P. The purpose and effect of article 727, C. C. P., is to prevent the prosecution from using against the accused, by the testimony of the officer placing him under arrest, a verbal statement made by the accused which the state seeks to use in proving his guilt. Lightfoot v. State, 117 Texas Crim. Rep., 515, 35 S. W. (2d) 163, and authorities cited. While appellant testified on the trial that he shot deceased, and that he told the officer that he shot him, he did not say that he stated to the officer that he shot deceased in he back of the head. Appellant testified to facts raising the issue of self-defense. He said that he did not know whether he shot deceased in the back of the head or not. The testimony of the sheriff as to the statement appellant made to him tended to weaken appellant's theory of self-defense. We are unable to reach the conclusion that reversible error is not shown.

As shown by bill of exception No. 5, appellant's witness Eva Lockett testified on direct-examination that she had talked with deceased two or three hours before the homicide about some trouble he was having with appellant. Appellant sought to elicit from the witness by proper question that deceased stated to her at the time that he was going to see appellant at twelve o'clock about the trouble he was having with him and said further that he would have settled it with appellant before that time if he had known that appellant used the language toward his wife that he later learned about. The court certified to the following in the bill of exception: "The testimony of this witness shows that deceased told witness that morning that he would have settled the argument between deceased and defendant at the time they quarrled on the station platform prior to this conversation with this witness, and on the same morning that the conversation was had, his wife had told him that he, defendant Ed. Porter, had cursed her, but that he would see defendant at 12 o'clock that day and settle it at that time. The shooting occurred about 12:45 p. m. the same day after this conversation. The defense offered by defendant in this case includes the theory that deceased provoked the difficulty between the defendant and deceased, and that defendant shot and killed deceased in self-defense."

It is further certified in the bill of exception that the testimony of the witness was offered by appellant for the purpose of showing the state of mind of deceased at the time of the quarrel and the shooting, and for the

further purpose of showing that deceased was probably the aggressor in the difficulty resulting in his death. The court certifies that he was apprised that appellant was offering the testimony for this purpose. It is shown in the bill of exception that the testimony was rejected upon the state's objection. Further, it is shown that the threat, if any, involved in the statement was not communicated to appellant. The opinion is expressed that the court fell into error in rejecting the testimony. Appellant had testified that deceased, while talking to him at the freight depot, had, in effect, threatened to do him bodily injury, and had stated to him that he would see him at twelve o'clock and settle their difficulty. The declarations of deceased to the third party that he intended to meet appellant at twelve o'clock and settle the argument with him was in the nature of a threat. While not communicated to appellant, proof of such threat was admissible on the issue as to who made the first demonstration or who began or was most likely to have begun the difficulty. Branch's Annotated Penal Code, sec. 2079; Huddleston v. State, 54 Texas Crim. Rep., 93, 112 S. W., 64; Pate v. State, 54 Texas Crim. Rep., 491, 113 S. W., 757, 759; McMillan v. State, 65 Texas Crim. Rep., 319, 143 S. W., 1174; King v. State, 104 Texas Crim. Rep., 583, 286 S. W., 231. Appellant's testimony was to the effect that deceased made a demonstration toward him as if to pull a pistol at the time he (appellant) fired the fatal shots. He further testified that deceased came to his house pursuant to his threat to settle the quarrel with him, and told him that he would wait outside for him.

In his argument to the jury private prosecutor used language as follows: "Don't turn that beast loose. Under that frame of mind he would have shot you and me, and will do so yet if you don't put him where he will not have the opportunity to do so."

Appellant timely and properly objected to the remarks of counsel, and asked the court to instruct the jury to disregard them. The court overruled the objection and declined to give the instruction. It is certified in the bill of exception that there was no evidence in the record that appellant had threatened the life of any of the jurors or of private prosecutor. Further, it is certified that there was no evidence in the record from which a reasonable deduction could be drawn that appellant would kill the jurors if he was not placed where he would not have the opportunity to do so. The argument was improper. Substantially the same argument was condemned in the case of Cannon v. State, 84 Texas Crim. Rep., 479, 208 S. W., 660. In view of the fact that the argument will not occur upon another trial, we deem it unnecessary to decide whether, under the facts, it presents reversible error.

The failure of the court to postpone the case will not be discussed, as the matter will not occur upon another trial.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.