### ERNEST WILKERSON v. THE STATE.

#### No. 490.     Decided October 19, 1910.

#### Rehearing Denied November 30, 1910.

**1.—Rape—Charge of Court—Instructing Verdict of Not Guilty.**

Where, upon trial of rape by fraud, the evidence showed a sham marriage between a married man and an unmarried woman above the age of consent and there was also evidence that the woman believed she was entering into a valid marriage, it was not reversible error not to instruct a verdict of not guilty upon defendant's request. Following Lee v. State, 44 Texas Crim. Rep., 354. Davidson, Presiding Judge, dissenting.

**2.—Same—Sufficiency of the Evidence—Practice on Appeal.**

Where, upon appeal from a conviction of rape, the case was reversed on other grounds than the sufficiency of the evidence, the appellate court will not comment on the probative force of the evidence.

**3.—Same—Evidence—Declarations of Defendant—Sham Marriage.**

Upon trial of rape, where the indictment among other allegations charged that the rape was committed by fraud, and there was evidence of a sham marriage, there was no error in permitting the State to show the declarations of the defendant that he had property and was able to marry prosecutrix.

**4.—Same—Evidence—Marriage—Fraud.**

Upon trial of rape, where the allegation was that the defendant committed the same by fraud, and there was evidence of a sham marriage, there was no error in permitting the State to show that the defendant at the time of his courtship with prosecutrix was a married man; he holding himself out as a single man.

**5.—Same—Evidence—Common Law Marriage—Mock Marriage.**

Where, upon trial of rape by fraud, the evidence showed that the defendant held himself out as a single man, and that under the facts of the case their alleged marriage would have been legal as a common law marriage, there was no error in permitting the State to show that the defendant at the time of said alleged marriage was a married man and could not contract a common law marriage.

**6.—Same—Evidence—General Reputation of Prosecutrix.**

Upon trial of rape, where the defendant sought to contradict the prosecutrix on her cross-examination as a witness, there was no error in permitting the State to show the good reputation of prosecutrix for chastity and truth, although the wisdom of the court in admitting some of this testimony in advance of contradicting her may be doubted.

**7.—Evidence—Declarations by Prosecutrix—Letters.**

Upon trial of rape by fraud there was no error in admitting the declarations of prosecutrix in evidence which were made while she was living with the defendant and was apparently his wife, to the effect that they were married; nor was there any error in admitting certain letters written by her during this time, stating that they were married.

**8.—Same—Declarations by Prosecutrix—Evidence—Marriage.**

Upon trial of rape by fraud, there was no error in permitting the State to introduce the declarations of prosecutrix that she was married to the defendant, when defendant was arrested and it was first brought to her attention that the alleged marriage was a nullity.

**9.—Same—Evidence—Flight.**

Upon trial of rape by fraud there was no error in permitting the State to show the flight, or attempts at flight, by the defendant; although details of such attempted escape from jail might have been omitted.

**10.—Same—Evidence—Letters—Declarations by Defendant.**

Upon trial of rape by fraud there was no error in permitting the State to introduce in evidence a letter written by the defendant while he was living with prosecutrix as husband and wife, substantially admitting his marriage with prosecutrix.

**11.—Same—Evidence—Declarations of Third Party—Irrelevant Matter.**

Upon trial of rape by fraud, where the State had shown that the defendant, at the time of his sham marriage with prosecutrix, was married and not a single man as he had held himself out to be, it was reversible error to permit the State to show over objection of defendant that he had two young children by his legal wife and that the witness had taken care of them and defendant's wife and that defendant did not come to see or visit them.

**12.—Same—Evidence—Property.**

Upon trial of rape by fraud it was reversible error to permit the State to show that defendant had no property and had never acquired any as he had claimed to prosecutrix.

**13.—Same—Evidence—Hearsay—Declarations by Prosecutrix.**

Upon trial of rape by fraud it was reversible error to show that subsequent to defendant's arrest the prosecutrix, in the absence of defendant, had stated that she was married to defendant and how she was married.

**14.—Same—Evidence—Letters—Subsequent Declarations of Prosecutrix after Defendant's Arrest.**

Upon trial of rape by fraud it was reversible error to permit the State to show by a letter written by prosecutrix after defendant's arrest, and addressed to a third party that she believed she was married to defendant at the time of the alleged rape.

**15.—Same—Evidence—Acts of Third Parties.**

Upon trial of rape by fraud it was improper to permit the State to show by the testimony of the father of defendant's wife that he had redeemed the household goods of the defendant which were pledged for groceries and house rent while defendant was in jail.

Appeal from the District Court of McLennan. Tried below before the Hon. Richard I. Munroe.

Appeal from a conviction of rape; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Williams & Williams,* for appellant.—On the question of former marriage: Smith v. State, 74 S. W. Rep., 556; Smith v. State, 44 Texas Crim. Rep., 137.

On question of admitting evidence that the defendant had children by a former marriage: Same authorities last above cited.

Upon question of admitting testimony that defendant owned a house and other property: Tomlin v. State, 25 Texas Crim. App., 676.

On question of admitting testimony as to reputation of prosecutrix for truth and chastity: Wilson v. State, 17 Texas Crim. App., 525; Payne v. State, 40 Texas Crim. Rep., 290; Warren v. State, 54 Texas Crim. Rep., 443, 114 S. W. Rep., 380; State v. Forsythe, 43 N. W. Rep., 548; State v. Ward, 73 Ia., 532; State v. Pratt, 19 Oh. St., 277.

As to question of admitting evidence that defendant owned property: Johnson v. State, 57 Texas Crim. Rep., 488, 123 S. W. Rep., 1105; Tomlin v. State, 25 Texas Crim. App., 676.

On question of defendant's declarations: Laws of 1907, p. 219.

Upon question of not instructing verdict of not guilty, the evidence failing to make out a case of rape: Payne v. State, 38 Texas Crim. Rep., 494; King v. State, 22 Texas Crim. App., 650; Franklin v. State, 34 Texas Crim. Rep., 203; Mooney v. State, 29 Texas Crim. App., 257; Bloodworth v. State, 32 Am. Rep., 546. Dissenting opinion in Lee v. State, 44 Texas Crim. Rep., 354, 72 S. W. Rep., 1005.

Upon question of court's charge in withdrawal of certain testimony of prosecutrix as being an improper limitation on testimony of defendant's witnesses: Pefferling v. State, 40 Texas, 486; Thompson v. State, 33 Texas Crim. Rep., 472; Shirwin v. People, 69 Ill., 55.

Upon question of insufficiency of the evidence: Topolanck v. State, 40 Texas, 160; Thompson v. State, 33 Texas Crim Rep., 472; State v. Connelly, 57 Minn., 482; State v. Hamey, 65 S. W. Rep., 946; Gazley v. State, 17 Texas Crim. App., 267; Rogers v. State, 1 Texas Crim. App., 187; Rhea v. State, 30 Texas Crim. App., 483; Montresser v. State, 19 Texas Crim. App., 281; State v. Goodale, 109 S. W. Rep., 9; Kennon v. State, 42 S. W. Rep., 376; Owens v. State, 35 Texas, 359.

*John A. Mobley,* Assistant Attorney-General, and *C. F. Greenwood,* for the State.—On the question that the State had a right to support the testimony of prosecutrix by witnesses who had heard her

make statements similar to her testimony upon the stand: Articles 729, 791, White's Code Crim. Procedure, and authorities collated in section 4 of said article 729.

RAMSEY, JUDGE.—On April 9 of last year, in the District Court of McLennan County, appellant was convicted on a charge of rape, and his punishment assessed at confinement in the penitentiary for a period of five years.

The indictment upon which he was tried charged rape in three counts: one by force, threats and fraud, the second count by fraud, and the third count by means of a sham marriage brought about and obtained by the fraudulent and false representations of appellant that he was not married, which induced the prosecutrix, Myrtle Morgan, to believe that appellant was her husband, and that they had been married, and to induce her to have sexual intercourse with him by means of such strategem. The record is quite a voluminous one. It contains twenty-six bills of exception, some of which are elaborate, and in addition to this a number of complaints were made of the charge of the court.

1. We are met at the threshold of the case with the contention that under any view of the case the facts do not show the offense of rape, and it is urged where the evidence fails to make out a case or shows affirmatively that a defendant is not guilty, it is the duty of the court, upon request, to instruct a verdict of not guilty, and that the refusal of the court so to do is reversible error. It is conceded by counsel that under the authority of Lee v. State, 44 Texas Crim. Rep., 354, that his contention can not be sustained, but on the contrary the reverse of appellant's position was in that case distinctly and clearly ruled. It is urged, however, with great force and earnestness that the decision of the court in the case of Lee v. State, supra, is erroneous, and that the correct rule is laid down in the dissenting opinion filed in that case by Judge Davidson, then, as now, the presiding judge of this court. This matter has had our careful attention, and we have been much impressed with the force, clearness and vigor of Judge Davidson's opinion, but the majority of the court feel and think that the decision of the court in that case ought not to be disturbed and it will not be disturbed, and on the authority of that case it is clear that this contention of appellant can not be sustained.

2. It is next urged, in a very vigorous review of the facts, that the verdict of the jury and judgment of the court are unsupported by the evidence. Since the case has to be tried again it is unnecessary to decide this question, and any comment we might now make upon the probative facts of the evidence would perhaps be unnecessary, though we are not prepared to concede if such definite adjudication were demanded that on the facts of the case we would feel authorized to reverse the judgment of conviction. The nature of

the questions, however, is such that it will be absolutely essential to make a somewhat full statement of the facts in order that the opinion may be understood.

The injured female, Miss Myrtle Morgan, was the daughter of one W. H. Morgan. Morgan and his family lived on a farm a few miles from Abbott, in Hill County, Texas, where they had resided some four years. This young woman lived at the home with her parents, did household work, and occasionally worked in the field. The evidence tends to show she had not traveled, had not attended school in Hill County, and had gone· to school but little elsewhere, and that she was not well educated, and was a young girl of slight experience. The evidence tends to show that she and the family were rather obscure people and of humble station and circumstances. She seems, however, to have been a young woman of good character, and her reputation both for truth and veracity, as well as for virtue and chastity, is stated by all of her neighbors to have been good. The evidence shows that appellant was about twenty-three years of age, and that Miss Morgan was about twenty years of age. Appellant was a married man, and from the fact that he had two children must have been married some few years. In the latter part of August, 1908, he came to Abbott and become acquainted with Mr. Morgan, father of prosecutrix, to whom he applied for work. It seems that Mr. Morgan preferred a man with a family so that he would not have to board him, and that in this connection appellant told him that he had no family and would have to be boarded. He went to work at Mr. Morgan's house on the following Monday picking cotton, and remained there during September and October, occupying a room in the house, eating at the same table with the family, and being treated as one of the household. The evidence indicates that at different times he referred to the fact that he was a single man and had never married because he had never found a woman whom he loved, but stated if he ever met one he did love he was going to marry and settle down. The evidence shows he was quite intimately associated with prosecutrix day by day, and at different times mentioned to her the fact that he owned a house and lot in Hillsboro, and further that he had his life insured in favor of his mother, but if he ever got married he was going to make his wife the beneficiary of such policy. It seems, according to her testimony, that in the course of time he won her confidence and affections, and that they had become engaged, and that the time of the marriage was set for the first Sunday in December. Miss Morgan suggested that her father and mother be taken into their confidence, to which, according to her statement, appellant objected, giving as a reason that he did not believe her father would ever consent to give her up. About a week before the parties left Hill County appellant quit working at the Morgan home and went away a few miles to his brother's, who resided on another farm. On the

following Monday, however, he and his brother came to Mr. Morgan, where the family, including the young lady, were picking cotton, where he succeeded in getting her to promise to meet him in West on the following Saturday, with the statement that they would marry; that he would get a license, and have everything ready by that day. It seems that at this time Miss Morgan knew that her father and mother were going to West on that day. She also says that he told her that after they were married that they would live out West, and that in this connection he mentioned that he owned fifty acres of land in Eastern Texas, a house and lot in Hillsboro, and had some money in the bank, and that he intended to trade for some property in a town on the railroad north of Hillsboro, but indicated to her at the same time that they would live in West Texas. The parties met according to agreement in the town of West, where, according to her testimony, appellant told her that he had the license and asked her if she would go with him, to which she assented. She demurred to leaving home and getting married without letting her mother know of their intention, and also expressed a wish to write a note to her mother and take it to the dental office where her mother was and place it in her pocketbook. Appellant objected to this and said there was no necessity for it; that he would send word to her parents, telling her that he had always said that when he married he would keep it quiet and not have everybody talking about it. Finally, he assured her he had seen a Mr. Lankford, who was a close neighbor, and had arranged for him to see her father and mother and tell them that he had Myrtle and had gone with her, and that they would marry at Waco. Mr. Lankford was produced on the trial and stated that appellant had seen him on the day in question, and had substantially asked him to communicate this message. After procuring her consent not to advise her parents of their approaching marriage, according to the testimony of prosecutrix, he then procured a team and driver and they drove to Elm Mott, a few miles south on the M., K. & T. Railroad, and stated to her that he had gotten a justice of the peace, who would be on the train, to perform the ceremony. That soon after arriving at Elm Mott they went aboard the train and proceeded to Waco. According to her testimony, while on the way to Waco, a man came into the car and spoke to them, pulled out a paper from his pocket, which she thought was a marriage license, and in a few brief words went through a marriage ceremony and pronounced them man and wife. On reaching Waco appellant and prosecutrix secured a hack and drove to the hotel, where they spent the night. At this hotel appellant registered not under his own name, but as Morgan and wife. She further says that this was the first time she had ever been to Waco, and that she had never been to a hotel but once in her life and had never traveled any, and that she paid no attention to the names under which they were registered. On this night,

according to her testimony, he had carnal intercourse with her, and at the time she believed that she was his wife. Her testimony, if believed, is sufficient to induce the conviction that he must have known that he had made her believe that he had arranged for an officer to perform the marriage ceremony; that she did not doubt his word, and that there was nothing irregular in their marriage. The next morning they left Waco on the train, and while some short distance out of Waco, at a place called Acquilla, appellant's brother, Jim Wilkerson, joined them and proceeded west with them. They went on this day to Cisco and went to a hotel and remained until the next morning, and then came back to Carbon, a nearby station, where appellant secured employment to pick cotton for one Reed. During this time prosecutrix went to the field and worked by his side picking cotton, and also assisted Mrs. Reed in her household work. From there they went to the farm of one Hale, where they stayed until appellant was later arrested. Her testimony induces the belief that during all this time she thought she was the wife of appellant, and she was so introduced to Reed, Hale and others. The evidence also shows that on the morning they left Waco Mr. E. W. Cox, sheriff of Hill County, was at the depot. It seems he had known appellant in Hillsboro, and also knew that he was a married man, but had never seen his wife. In their conversation while on the train appellant referred to Miss Morgan as his wife. It is shown further that at Cisco he registered himself and Miss Morgan under his correct name, E. R. Wilkerson and wife, Waco, Texas. It is further shown in the evidence that while in Eastland County prosecutrix wrote two letters to her parents, both consistent with the theory and conviction that they had married. There is also in the record a letter written by appellant that carries the same purport. After the purported marriage some little time the parties were located and appellant was arrested. When arrested, according to some of the testimony, Miss Morgan asserted that they were married, while according to the testimony of other witnesses she confessed and conceded that they had not been married. This is the State's case, and but a brief summary of the more important portions of it. Practically all the essential matters put in evidence by the State were fiercely and vigorously assailed by appellant both in his cross-examination of Miss Morgan as well as by the production of other testimony. There are some contradictions in the testimony of appellant on the trial from which this conviction resulted and on the examining trial. No one on the train knew anything of the marriage, and the defendant's testimony, considered altogether, strongly suggests the unlikelihood, if not indeed the impossibility, that such a marriage could have occurred without, considering the position of several witnesses, the matter having become known. We deem it unnecessary to set out this testimony in detail. It was also shown by one Wilson, who, however, was impeached, that Miss Morgan said to him that they

had not been married; that appellant was already married, but that as soon as he got a divorce from his other wife they were going to marry. This will probably be a sufficient statement of the case to render the opinion understood.

3. During the trial the State was permitted to put in evidence certain declarations of appellant in regard to his possession of property, houses and money. We think this testimony was admissible as *tending to* show the reasonableness of the prosecutrix' testimony. In other words, to show from her point of view he was not a stranger or a roving tramp, doing occasional odd jobs of work, but was a man of substance and property, somewhat settled in life, prepared to marry and able to care for a wife, and as affecting the probability of her consenting to become his wife.

4. Again, we think it was admissible for the State to show that he was at the time of his courtship with Miss Morgan, and at the time of the subsequent alleged marriage, married to another woman. This throws to our minds a flood of light on his conduct in inducing her not to communicate their intended marriage to her father and mother, the secrecy of his movements, his leaving home to be married, and explains to some extent her conduct as well as his own in a manner consistent with the theory of the State and her belief in the fact that he was a single man. It was clearly admissible also on the proposition that except for the fact that he was at the time a married man and therefore under legal disability preventing their marriage, there would otherwise have been a complete defense in that the facts showed a common law marriage.

5. During the trial testimony was offered showing the good reputation of Miss Morgan both in respect to chastity and for truthfulness. We think in view of the most vigorous and suggestive cross-examination of this witness that this testimony was clearly admissible. We doubt the wisdom of the court admitting some of this testimony in advance of the production of testimony contradicting her, but in view of the numerous contradictions of her testimony and in view of her entire cross-examination, which sought to elicit from her the fact, and which was strongly calculated to induce the jury to believe that she had willingly left home with him to engage in the act of carnal intercourse, as showing the truth of her intentions, and as justifying and supporting her conduct in the belief that she and appellant were married, it seems to us to be clearly admissible and proper for the State to show what manner of woman she was as bearing on these important issues.

6. It is urged that the court erred in admitting in evidence declarations of Miss Morgan while she was living with appellant, and while apparently his wife, to the effect, in substance, that they were married, and it is particularly objected that it was improper to admit in evidence certain letters written by her during this time, to the effect, in substance, that she and appellant were married.

We think any act, declaration or conduct of Miss Morgan, while occupying to all the world the relation of wife to appellant, and explanatory of their relations, consistent with their apparent attitude, was admissible and not subject to the objections interposed to it.

7. We also think that her declarations to the same effect when appellant was arrested, and it was first brought to her attention that the marriage was a nullity, and that in truth she was not his wife, were likewise admissible.

8. We also think it was proper for the State to show attempt on the part of appellant to escape. Escape, flight and attempts to escape are always admissible as evidence of guilt. We think in this case, however, that some of the details introduced, and particularly the statement of the jailor as to what would have been the effect of a successful effort on the part of appellant with reference to other prisoners, and some other details showing the nature and extent of the encounter between the parties, might well be omitted.

9. A letter was introduced by appellant while they were living together as husband and wife, the effect of which was a substantial admission of their marriage. This was admissible as an admission by appellant that they had been married, and as a declaration consistent with the existence of the marriage state.

10. We believe, however, that the case must be reversed for the admission of testimony by the court which should have been excluded. It was shown by one W. R. Roby, over objection by appellant, that he had two young children, and further, that his daughter, the wife of appellant, had come to his house the latter part of August or first of September, 1908, bringing the children of appellant with her, and that after she came to his house in Henderson County appellant did not come to see or visit his wife and children, but they still remained with him, and had not seen appellant from that date until the beginning of this trial. This testimony was objected to on the ground that it was highly improper and inflammatory, prejudicial to the rights of appellant, and immaterial to any issue in the case. We believe these objections are well taken. It was pertinent, we think, to show, for the reasons mentioned, that appellant was married, but whether he had a child or children and his relations afterward towards them, could only serve to incense the jury against him. It was peculiarly important in this character of case where instinctively the jury, under any view of the testimony, would be inclined to condemn appellant's conduct that none but legitimate testimony should be adduced on his trial.

11. Again, on the trial certain witnesses were introduced to show that, as a matter of fact, appellant had no property, house or lot, in Hill County, had never acquired any, and had never conveyed any. In other words, it was sought to be shown and the State was permitted to show that his claim of ownership of property was untrue. There is no ground that we can conceive upon which the

action of the court in admitting this testimony could be sustained. It involved, of course, a statement that appellant's claim to Miss Morgan was untrue, and was such an attack upon his truthfulness and character generally, in respect to a matter not showing or tending to show his guilt, as must still further have prejudiced the jury against him.

12. Again, it was shown on the trial, through Mr. A. M. Frazier, then the county attorney of Hill County, that subsequent to appellant's arrest, and after the institution of the present prosecution, that Miss Morgan had stated to him that she had been married to appellant, and that said marriage took place on the Missouri, Kansas and Texas Railway passenger train between Elm Mott and Waco. That this testimony was hearsay, not made during the existence of any status or relation between the parties, was a declaration adverse to appellant in his absence, after the beginning of the prosecution, were sufficient grounds, in our judgment, why it should have been excluded. She was no longer under the impression that she was his wife; it was not a declaration made during the existence of their relation, but was a bare statement as to a past transaction, narrative in its nature, made in the absence of appellant, and clearly hearsay.

13. Again, the State was permitted to introduce in evidence against appellant a letter written by Miss Morgan on December 4, 1908. This letter is to this effect:

"Abbotte, Texas, Dec. 4, 1908.
"Mrs. W. A. Hale,
"Kind Friend: I will write to you as I promised. I am at home now. I got home a Tuesday; I got at Hillsboro Tex a Monday morning.
"You know we told you all we was married. I thought we was Mrs Hale you no I said when we started I didn gess we was married I was afraid to say we was before him   He is in jail now. I hope I will get a ans from this soon.
"From your friend,
"Myrtle Morgan."

At this time appellant was in jail, and, of course, absent when the letter was both written and mailed. The admission of this letter was objected to on the ground that it was hearsay, and because it was the statement of the witness made in the absence of the defendant, and because it was an attempt to corroborate the prosecutrix by her own words and acts, and because it is an opinion and self-serving declaration of the witness at a time when appellant was in jail resting under a charge for which he was thereafter convicted. In this connection it should be stated that Mrs. Hale was introduced as a witness for the defense, and testifies that after the arrest and

while the matter of marriage was being discussed, that at one time Miss Morgan admitted that as a matter of fact they had never been married. The letter bears intrinsic evidence of the fact, it seems to us, that it was intended to forestall to some extent Mrs. Hale's testimony. It contains a sentence: "Mrs. Hale you know I said when we started I did not guess we were married. I was afraid to say so before him. He is in jail now." Again, it contains the statement: "You know we told you all we was married. I thought we was." It seems clear to us that this testimony was not only hearsay, but was under all the circumstances most damaging and should have been excluded.

14. Finally, it was proposed to be shown by the testimony of Roby that he, acting in behalf of appellant's wife, had redeemed his household goods, where same were pledged in Hillsboro for groceries and house rent and had them shipped to appellant's wife in Henderson County, and that this was in January, 1909, while appellant was in jail on this charge. The court explained that this testimony was during the trial admitted, but later was withdrawn from the consideration of the jury, and that the jury were instructed by the court that same was withdrawn from their consideration, and they must not consider same for any purpose. The action of the court in withdrawing the testimony is to be commended, though on another trial if offered it should be promptly excluded.

15. We have quite briefly discussed most of the questions raised on the appeal. On another trial the court in the admission of testimony should conform to the suggestions we have made, and in view of the character of the case be careful and diligent in seeing that no improper testimony should be admitted.

For the errors pointed out the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

DAVIDSON, Presiding Judge.—I concur in reversing this judgment, but I dissent from that portion of the opinion in which the majority hold as correct the Lon Lee case referred to in opinion. I am fully convinved the Lee case is not correct.

[Rehearing denied November 30, 1910.—Reporter.]