**Guadalupe MACHADO, Appellant,**

v.

**STATE of Texas, Appellee.**

**Johnny MACHADO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 46292, 46293.**

Court of Criminal Appeals of Texas.

May 23, 1973.

Rehearing Denied June 6, 1973.

Edith Roberts, Austin, for appellants.

Robert O. Smith, Dist. Atty., Michael J. McCormick, Asst. Dist. Atty., Austin, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

These are appeals from a joint trial, in which both appellants were convicted of murder with malice. The punishment of appellant Johnny Machado was assessed at fifteen (15) years; that of appellant Guadalupe Machado was fixed at life. Al-

though separate appeals have been filed, appellants, through their attorney, have submitted a joint brief and joint grounds of error.

In their first three grounds of error, appellants attack the sufficiency of the evidence to sustain the convictions.

Appellants were jointly charged by indictment with murder with malice of one Jose Sandoval by shooting him with a gun on or about January 17, 1972. The record reflects evidence from witnesses placed on the stand by the State as follows:

Mrs. Elisa Billela testified that Jose Sandoval came to her home, where she lived with her husband and their seven children, about 5:00 P.M. on January 17, 1972, and remained there watching television until about 10:00 P.M. She said he was a friend of the family and that it was customary for him to come there every afternoon to watch T.V. When he left on this occasion, she locked the door and continued to watch T.V. About ten minutes thereafter, she heard a noise as though someone was trying to open the door. She opened the door, saw deceased Jose Sandoval on the ground, and saw appellant Guadalupe Machado shoot him two times. When she told him not to shoot[1] deceased, this appellant pointed the gun at her, and she shut the door and went back into the house. She then heard another shot. She did not see appellant Johnny Machado at this time. She had seen him about 9:45 P.M., when he came to the house and asked for her sixteen year old daughter, Diana, who was out on a date with her current boyfriend. About three years prior to this, Diana had lived with appellant Guadalupe for a period of time, until her mother had brought her home. Thereafter, Diana had received several letters from appellant "Lupe," which witness had not read. Appellant Johnny Machado lived across the street from witness. The defense through

cross-examination attempted to suggest that deceased had been intimate with Diana, but no actual evidence to that effect was presented.

Nick Rios, 13 years of age, testified that he lived with his parents about half a block from the Billela home. "Somewhere" after 10:00 P.M.[2] on January 17, 1972, while he was on his front porch working on his bicycle, he saw Jose Sandoval, the deceased, drive his pickup truck in front of the Rios home and stop across the street at a washateria. Jose went into the washateria, got some soda water, and then got back into the truck, turned around, and went back in the direction from which he had come. Witness saw appellants Johnny and Guadalupe Machado, who had been parked in a car in an alley behind the washateria, get out of their car and start walking in the direction Jose had gone. He next heard three shots, after which he saw appellants walk back to their car, enter it and drive away with the lights off. He saw appellant "Lupe" stick something in his pocket. Nick then went to the Billela home and saw Jose Sandoval, whom he knew, lying dead on the porch.

Mrs. Sarah Rios, mother of Nick Rios, testified that she saw Jose Sandoval, the deceased, as he got out of his truck to get a can of soda water at the washateria. She saw him re-enter his truck and drive off. She saw both appellants as they followed the pickup. Later she heard some shots and next saw both appellants running back to their car, enter it, and "take off with the lights off." She saw something in "Lupe's" hands. From the time appellants had started walking behind deceased's truck until they came running back to their car, about five or six minutes had elapsed.

Officer Hill of the Austin Police Department was called to the scene of the shooting and took some photographs. One, introduced as State's Exhibit 1, was of the

---

1. The gun was not presented during the trial, but was identified as a .22 pistol.

2. He estimated the time at "about 10:30, somewhere around there. I don't know what time it was."

scene just outside the door of the Billela home, with a body lying partly on the porch and partly on the ground. Another, marked for identification as State's Exhibit 2, but not admitted in evidence, was a closeup picture of the upper part of the body and the face of a man. Officer Hill testified both pictures were of the same man, the one he found on the doorsteps of the Billela home.

Mrs. Billela testified that Exhibit 1 represented the scene as it was right after appellant Guadalupe Machado shot deceased. She also testified that Exhibit 2 (for identification only) was a photograph of deceased Jose Sandoval.

Dr. Chenar, a qualified pathologist, testified that he had performed an autopsy on the body of Jose Sandoval, being called by the funeral home to do so at 5:00 A.M., January 8, 1972. He identified the man in State's Exhibit 2 as the person on whom he did this autopsy. He found three entrance wounds where deceased was shot. He gave the cause of death as a bullet wound entering the chest causing severe injury to both lower chambers of the heart resulting in leakage of blood out of the heart.

Appellant Johnny Machado was arrested about 1:00 A.M., January 18, 1972, at his home. Appellant Guadalupe Machado was arrested on February 5, 1972. He was hiding in an attic at his home at the time of his arrest.

Appellants did not testify at the guilt stage of the trial and did not call any witnesses.

■ Appellants first contend that the State failed to prove the corpus delicti of the offense, in that the dead body was not sufficiently identified as the person alleged to have been killed. The testimony of Mrs. Billela, Nick Rios, the officers and the pathologist amply identified deceased as the Jose Sandoval named in the indictment. See Burns v. State, Tex.Cr.App., 388 S.W.2d 690 (on rehearing, p. 699). This contention is overruled.

As to appellant Guadalupe Machado, he was positively identified by Mrs. Billela as having shot and killed deceased.

The State relied on the law of principals to prove the guilt of appellant Johnny Machado. In this regard the court charged the jury as follows:

"All persons are principals who are guilty of acting together in the commission of an offense. When an offense is committed by one or more persons, but others are present and, knowing the unlawful intent, aid by acts, or encourage by words or gestures those actually engaged in the unlawful act or who advise or agree to the commission of an offense and are present when the same is committed whether such person aid or not in the illegal act; or who, not being actually present, keep watch so as to prevent the interruption of those engaged in committing the offense, or who, whether present or not, are doing something in furtherance of the common design at the time the offense is committed; such persons are principals, and may be prosecuted and convicted as such. Mere presence alone will not constitute one a principal."

The evidence shows that the appellant Johnny had been at the Billela house talking to Mrs. Billela a short period, probably from fifteen minutes to half an hour, before the shooting, inquiring about her young daughter Diana, with whom appellant Guadalupe had been intimate a few years back. Deceased was at the house at the time, with his truck parked in front. Shortly thereafter, deceased left the house, got in his truck, and went half a block to a washateria for a can of soda water. Both appellants were sitting in their car behind the washateria. When deceased got back in his truck, the two brothers got out of their car. Whether or not deceased saw them was not shown, but at any rate he turned his truck around and went back in the direction of the Billela home. Both appellants followed. Very shortly thereafter,

the shots were heard by Nick Rios and his mother, a half block away. These witnesses then saw both brothers coming from the direction of the Billela home, get in their car, and leave. Mrs. Billela testified they were running. She said she saw them get in the car and "take off with the lights off."

■ Mere presence at the scene of the offense does not establish one as a principal offender. Vela v. State, Tex.Cr. App., 491 S.W.2d 435. But the evidence recited above shows more activity on the part of appellant Johnny than mere presence. The joint presence of appellants, both before and after the shooting, is evidence to be considered with all other facts and circumstances on the issue of principals.

"The agreement of the parties to act together in an unlawful act or design may be established by circumstantial as well as direct evidence." Fantroy v. State, Tex.Cr.App., 474 S.W.2d 490, 492.

■ Flight is a circumstance from which an inference of guilt may be drawn. Ysasaga v. State, Tex.Cr.App., 444 S.W.2d 305; Williams v. State, Tex.Cr.App., 479 S.W.2d 300; Waters v. State, Tex.Cr.App., 491 S.W.2d 119.

In Cawley v. State, 166 Tex.Cr.R. 37, 310 S.W.2d 340, 342, the court said:

"Escape, flight and attempts to escape are always admissible as evidence of guilt. Wilkerson v. State, 60 Tex.Cr.R. 388, 131 S.W. 1108, 1111. But presence in the vicinity of a crime and flight is not alone sufficient to sustain a conviction. Hilson v. State, 101 Tex.Cr.R. 449, 276 S.W. 272.

"Where evidence of flight has been received the defendant may explain his actions. Chastain v. State, 97 Tex.Cr.R. 182, 260 S.W. 172.

"Appellant offered no such explanation and the evidence stands as a circumstance tending to prove that he committed the theft of the tubing with which he was charged and now stands convicted."

■ While the only evidence of flight as to Johnny Machado was that he was seen running with his brother from the area where the shooting occurred to their car, and then taking off in the car without lights, such was evidence for the jury to pass on.

The facts and circumstances of this case as shown by the evidence herein detailed are sufficient to support the jury's finding of the guilt of appellant Johnny Machado as a principal. See Gerzin v. State, Tex. Cr.App., 447 S.W.2d 925; Fantroy v. State, supra.

Appellants' first three grounds of error are overruled.

Appellants in their fourth ground allege error in the court's failure to charge on murder without malice.

■ As this Court noted in Corbett v. State, Tex.Cr.App., 493 S.W.2d 940 (1973):

"The charge on murder without malice is mandatory only in cases where there is evidence that the defendant acted under the immediate influence of sudden passion arising from an adequate cause. Art. 1257c, V.A.P.C.; Ortegon v. State, [Tex.Cr.App.,] 459 S.W.2d 646."

See also Garza v. State, Tex.Cr.App., 479 S.W.2d 294.

■ We find no evidence in the record requiring a charge on murder without malice. The fourth ground of error is overruled.

In their fifth ground, appellants complain of the failure of the court's charge to require the jury to find a specific intent to kill. Appellants' requested charge on that issue was refused by the court.

■ Appellant Guadalupe Machado was seen to fire two shots with a .22 pistol into

the body of deceased. A .22 pistol is a deadly weapon per se. Beasley v. State, 171 Tex.Cr.R. 115, 346 S.W.2d 123. A third shot was heard after Mrs. Billela had shut the door upon seeing the firing of the first two. Deceased died as a result of the shooting. Neither appellant testified at the guilt stage, and there was no evidence of a lack of intent to kill. Under such circumstances, the court did not err in refusing appellants' requested charge as to intent to kill. 4 Branch's Ann.P.C., Sec. 2299, pages 656–657; Corbett v. State, supra; Beasley v. State, supra, Davis v. State, Tex.Cr. App., 440 S.W.2d 291.

The judgments are affirmed.

Opinion approved by the Court.