**Opinion issued July 12, 2012**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-11-00364-CR

_____

**DENITO NORMAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Case No. 1274558

## MEMORANDUM OPINION

This is an appeal from a conviction for possession with intent to deliver at least 400 grams of cocaine. Appellant Denito Norman challenges the sufficiency of the evidence to support his conviction. We affirm.

# BACKGROUND

Appellant was arrested after a police search led to him being discovered hiding under a table on an apartment patio, along with codefendant Emmanuel Mayweather. A bag containing guns and cocaine was located "between them," leading to their both being charged with possession of its contents. At trial, the State relied primarily on the testimony of a cabdriver, Syed Mohiuddin, and the police officers involved in the search for, and arrest of, appellant and Mayweather, to link appellant to the contents of the bag.

## A. Trial Testimony

Mohiuddin testified that about 9:00 or 9:30 on the evening August 16, 2010, he was dispatched to pick up passengers at an Economy Lodge Motel. He waited a while, and eventually Mayweather and appellant came out and got into his cab. He noticed that Mayweather was carrying a "laptop bag or something" like an "office bag." When Mohiuddin asked to which address they needed a ride, Mayweather responded, "[W]e don't know yet. We will tell you in a minute." After Mayweather made a couple of phone calls, he instructed Mohiuddin to take I-45 South. Mayweather then told him to exit College Avenue, u-turn, and pull into the parking lot of a tattoo parlor.

At the tattoo parlor, both appellant and Mayweather got out of the cab and one of them paid the fare. Appellant then "jumped back into the cab, and he said,

2

wait, don't leave.  We need a ride back to the hotel."  There was a red Lincoln Navigator parked facing the tattoo parlor.  Mayweather, who was still carrying the black bag, went over to talk to someone in the Navigator and, about a minute later, a Toyota Corolla pulled up and parked beside Mohiuddin's cab.  Mohiuddin then moved his cab from its position facing the building to a position facing the exit.  Mohiuddin got out of his cab to smoke a cigarette, and he could see Mayweather talking to a man in the Navigator.  Mohiuddin testified that they appeared to be "making some kind of deal."  He saw Mayweather use his nail to taste something that looked like a powder.  After Mohiuddin got back in his car—where appellant was still waiting—Mayweather came running back to the cab saying, "[L]et's go. Let's go."  Mohiuddin did not see if Mayweather had the black bag when he returned to the cab.

As Mohiuddin started to drive out of the parking lot, the Navigator and Corolla gave chase and then boxed him in.  He turned back towards the building and saw that someone had gotten out of the Corolla with a gun.  He jumped the curb out of the parking lot and ran a red light in his attempt to get away.  Someone started shooting at the cab.  Mohiuddin got onto I-45 South, with both the Navigator and Corolla chasing and firing at him.  He was driving about one hundred miles per hour when his back tire was shot out.  Realizing that he would not make it far on three tires and an almost-empty gas tank, Mohiuddin slammed

3

on his brakes, u-turned, and started driving the wrong direction down the freeway. Mayweather, who had a gun and had been trying to fire back at their pursuers, ordered Mohiuddin off the freeway. Mohiuddin testified that during this vehicle chase down the freeway, appellant was hiding in the back of the cab.

After Mohiuddin got off the freeway, he stopped and ordered Mayweather and appellant out of the cab in front of an apartment complex. Mohiuddin drove to a nearby restaurant to call police. The Corolla pulled in after him and the driver asked where he had dropped off Mayweather and appellant. The Corolla then took off in pursuit of Mayweather and appellant, and Mohiuddin went inside to request assistance from the manager.

Sandra Coutee, a resident at The Lakes apartments, testified that at about 11:30 p.m. on August 16, 2010, she heard loud banging on the door next to hers. She looked through the peephole on her door to see what was going on, as she knew that that adjacent apartment was unoccupied. She saw Mayweather knocking on the empty apartment's door, and he asked her, through her door, for the name of the apartment complex. She refused to answer and told him she was calling the police, which she immediately did. She heard Mayweather call downstairs to someone else that she was calling the police.

4

Coutree saw Mayweather had a black bag with him that he set down while he was knocking on the apartment door. Mayweather then left, and Coutee stayed in her apartment until the police arrived.

Following up on multiple reports about the shootings on the freeway, as well as calls from Mohiuddin and Coutee, the police conducted a ground and helicopter search for Mayweather and appellant. Using an infrared camera, a police helicopter directed ground units to where Mayweather and appellant were hiding on an apartment patio under a table.

Sergeant James Bosworth with the Houston Police Department testified to recovering a black bag when Mayweather and appellant were arrested. It contained a Tech 9 handgun, a .40 caliber handgun, and a kilo of cocaine. When asked about the position of appellant and Mayweather under the patio table they were hiding under in relation to the bag, he responded that, "[t]o the best of [his] memory, they were laying side by side, kind of front to back, and the bag was right in front of them on the ground." He could not recall exactly where the bag was, and could not see if "anyone had their hand on the bag or if anyone was trying to hide the bag."

Officer Kurt Rogers similarly testified that, when police first discovered them, appellant and Mayweather were "on their sides or their backs, . . . laying down" under the patio table with the " black bag right at their feet." He further

5

explained, "their bodies were under the table, and their legs were kind of out underneath; and the bag was by their legs, by their knees, maybe by their calves, I don't know, but right toward the bottom part of their legs." On the police report, Officer Rogers indicated that the bag was found "between" Mayweather and appellant, and he testified at trial that he could not recall who was closest to the bag. He did not see anyone's hand on the bag.

## B. The Jury's Verdict and Trial Court's Judgment

The jury found appellant and Mayweather guilty of possession with intent to deliver at least 400 grams of cocaine. The jury also found a weapons enhancement to be true as to both appellant and Mayweather. The trial court assessed punishment at fifteen years' confinement and a $5,000.00 fine. Appellant timely appealed here.

## ISSUES ON APPEAL

In three points of error, appellant argues that his conviction should be reversed because:

1. "The evidence was insufficient to support the Jury's verdict finding that the Appellant acted either as a sole actor or as a party to the charged offense of possession of cocaine weighing more than 400 grams, with the intent to deliver";

2. "The evidence was insufficient to support the Jury's verdict that Appellant was guilty of the offense of possession of at least 400 grams of cocaine 'with intent to deliver' the cocaine";

3. "The Trial Court abused its discretion in denying Appellant's 'Motion for Instructed Verdict' where the evidence was insufficient to support a conviction."

## STANDARD OF REVIEW

"[E]vidence is insufficient to support a conviction if considering all record evidence in the light most favorable to the verdict, a factfinder could not have rationally found that each essential element of the charged offense was proven beyond a reasonable doubt." *Gonzalez v. State*, 337 S.W.3d 473, 478 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)); *Ervin v. State*, 331 S.W.3d 49, 54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). Evidence is insufficient under this standard if (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; or (4) the acts alleged do not constitute the criminal offense charged. *Gonzalez*, 337 S.W.3d at 479; *see Jackson*, 443 U.S. at 314, 318 n.11, 320, 99 S. Ct. at 2786, 2789 n.11. If an appellate court finds the evidence insufficient under this standard, it must reverse the judgment and enter an order of acquittal. *Gonzalez*, 337 S.W.3d at 479.

An appellate court "determine[s] whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence viewed in the light most favorable to the verdict." *Clayton v. State*, 235 S.W.3d

772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, an appellate court presumes that the factfinder resolved the conflicts in favor of the verdict and defers to that resolution. *Id.* (citing *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793). In viewing the record, a court treats direct and circumstantial evidence equally: circumstantial evidence can be as probative as direct evidence, and "circumstantial evidence alone can be sufficient to establish guilt." *Clayton*, 235 S.W.3d at 778 (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

## SUFFICIENCY OF POSSESSION EVIDENCE

### A. Applicable Law

*Possession*

To prove unlawful possession of a controlled substance, "the State must prove that (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband." *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (Vernon 2010) ("'Possession' means actual care, custody, control, or management.").

Possession need not be exclusive. *Roberson v. State*, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). When the accused is not in exclusive possession of the place where the controlled substance is found, then

8

additional, independent facts and circumstances must affirmatively link the accused to the substance in such a way that it can reasonably be concluded that the accused possessed the substance and had knowledge of it. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005); *Kibble v. State*, 340 S.W.3d 14, 18 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). In other words, whether direct or circumstantial, the evidence "must establish, to the requisite level of confidence, that the accused's connection with the [contraband] was more than just fortuitous." *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).

Links that may circumstantially establish the sufficiency of the evidence to prove knowing possession include (1) the defendant's presence when a search is conducted; (2) whether the substance was in plain view; (3) the defendant's proximity to and the accessibility of the substance; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the substance was found; (12) whether the place where the substance was found was enclosed; (13) whether the defendant was found with a large amount of

9

cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162 n.12.

Not all of these factors must be proved; rather, it is the cumulative logical force the factors have in proving possession that we must consider. *See James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Additionally, absence of some of the factors is not evidence of innocence that must be weighed against the factors that are present. *Id*. Rather, they are used to assess the sufficiency of the evidence linking the defendant to knowing possession of contraband. *See, e.g.*, *Roberson*, 80 S.W.3d at 735–36; *Allen v. State*, 249 S.W.3d 680, 692 n.13 (Tex. App.—Austin 2008, no pet.) (explaining that presence or absence of factors "aid appellate courts in determining the legal sufficiency of evidence in knowing possession of contraband cases").

### *Law of Parties*

Under the law of parties, a person is criminally responsible for the conduct of another if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PEN. CODE ANN. § 7.02(a)(2) (Vernon 2011). "The evidence must show that, at the time of the offense, the parties were acting together, each contributing some part toward the execution of their common purpose." *Duvall v State*, 189 S.W.3d 828, 831 (Tex. App.—Houston [1st Dist.]

10

2006, pet. ref'd). "In determining whether a defendant participated in an offense as a party, the factfinder may examine the events occurring before, during, and after the commission of the offense and may rely on actions of the defendant that show an understanding and common design to commit the offense." *McKinney v. State*, 177 S.W.3d 186, 197 (Tex. App.—Houston [1st Dist.] 2005), *aff'd*, 207 S.W.3d 366 (Tex. Crim. App. 2006).

### B. Parties' arguments

Appellant argues that there is no evidence that he possessed the cocaine, or that he was a party to that offense. He points to the trial testimony about Mayweather being the sole person that (1) carried the black bag containing the contraband, (2) gave Mohiuddin directions to the tattoo parlor, (3) interacted with the person in the Navigator and appeared to engage in a "deal," and (4) attempted to fire a gun at the Corolla that was chasing them down. Appellant contrasts this testimony about Mayweather's activities with the testimony demonstrating that—while he did travel in the cab with Mayweather—he (1) only sat in the cab to wait for Mayweather without interacting with anyone in the Navigator or the Corolla, and (2) did nothing to assist Mayweather when the cab was chased down I-45 while Mayweather returned their pursuers' gunfire. In light of these facts, according to appellant, the evidence falls short of demonstrating that he was in control or possession of the drugs as the sole actor.

11

He similarly argues that there is no evidence that he was criminally responsible for the conduct of Mayweather under the law of parties. Specifically, he contends that there is "no evidence that Appellant had the intent to commit the charged offense and in furtherance of that intent, spoke any words of encouragement to Mr. Mayweather or engaged in conduct that could be construed as encouragement to commit the charged offense." He points to the lack of evidence as to the subject of any conversation he had with Mayweather in the cab, as well as the lack of evidence that he directed Mayweather in the drug transaction, or in deciding when or how to flee. Finally, he asserts that there is no evidence that he actually "aided or attempted to aid Mayweather in the commission of the charged offense."

The State responds that appellant's proximity and access to the black bag of drugs, as well as his attempt to flee and hide with Mayweather are affirmative links that show appellant's possession and control of the drugs as a sole actor. The State also points to the amount of cocaine found in appellant's possession, and "appellant's lack of surprise at the discovery of contraband and weapons" as evidence supporting the jury's finding that appellant possessed the cocaine.

Alternatively, the State argues that there is evidence that appellant was a party to the offense. While it acknowledges that '[m]ere presence of the appellant at the scene is not enough," it argues that presence is "a circumstance that,

12

combined with other facts, may show the appellant's participation." Here, appellant held the cab for Mayweather and "behaved like a look-out." According to the State, one of the pictures taken in the cab show appellant with a gun in hand as they are fleeing the scene of the drug deal.[1] Finally, the State relies heavily on the fact that appellant fled with Mayweather, and was "found with the cocaine and two handguns at his feet."

**C. Analysis**

The jury was instructed on the definition of possession and on the law of the parties. Thus, sufficient evidence under either theory will support the jury's finding of guilt. Because, for the reasons explained below, we conclude that there is sufficient evidence that appellant was a party to Mayweather's possession, we need not reach whether there are adequate links to demonstrate appellant's possession as a sole actor.

While appellant relies heavily on the absence of direct evidence of an agreement with Mayweather to participate together in an offense, it has long been

---

[1]   An automatic camera mounted in Mohiuddin's cab took pictures of the inside of the vehicle at various times during the events testified to at trial. It is one of those pictures, which were admitted at trial, that the State claims shows appellant with a gun in the back seat. Appellant disagrees with that characterization of the picture. We have examined the original exhibit and note that it is so dark as to render the subjects of the picture virtually unrecognizable, and no gun is visible. While the State argues that the jury saw a clearer copy of that picture in a power point demonstrative, it concedes that power point was not entered into evidence, so we cannot consider that fact here.

recognized that such evidence will rarely be available. Rather, participation in a criminal offense is often inferred from the circumstances. *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987); *Phelps v. State*, 730 S.W.2d 198, 200 (Tex. App.—San Antonio 1987, no pet.). Because agreement of the parties to act together in common design seldom can be proved by direct evidence, the jury can rely on the actions and words of the parties demonstrating an understanding and common design to do a certain act. *Mayfield v. State*, 716 S.W.2d 509, 514 (Tex. Crim. App. 1986); *Ex parte Prior*, 540 S.W.2d 723, 727–28 (Tex. Crim. App. 1976).

Appellant's continued presence and accompanying Mayweather through the events of the evening of August 16, 2010 is some evidence, when taken in conjunction with all the other circumstances, supporting a finding that he participated in Mayweather's offense. *See Harris v. State*, 645 S.W.2d 447, 457 (Tex. Crim. App. 1983) ("While mere presence of an accused at the scene of an offense is not sufficient in itself to support a conviction, V.T.C.A. Penal Code, § 7.02(a)(2), it is a circumstance tending to prove guilt, which, combined with other facts, may suffice to show the accused was a participant."); *Machado v. State*, 494 S.W.2d 859, 863 (Tex. Crim. App. 1973) (appellant's and codefendant's "joint presence . . . , both before and after the shooting, is evidence to be considered with all other facts and circumstances").

There is evidence of appellant's actions before, during, and after the drug transaction that support the inference that appellant and Mayweather shared an understanding and common plan. *Harris*, 645 S.W.2d at 457–58 ("In determining whether a person was a participant in an offense the courts may look to events before, during, and after commission of the offense, including actions which show an understanding and common design to do a certain act.") (citing *Alexander v. State*, 607 S.W.2d 551, 553 (Tex. Crim. App.1980)). Before the drug deal at the tattoo parlor, appellant came out of the hotel with Mayweather and travelled with him in the cab while Mayweather was carrying a bag. On the way to the tattoo parlor, appellant was in the backseat of the cab with Mayweather, well within earshot of Mayweather's telephone calls arranging a meeting place for the drug transaction.

More importantly, appellant arranged to hold the cab for Mayweather and appeared to act as lookout during the transaction. Indeed, it was appellant's holding the cab that provided Mayweather a get-away vehicle, as Mohiuddin testified that as soon as he realized from viewing Mayweather's actions that "something is not right" that was escalating into an "emergency" situation, the only reason he did not leave the scene was that appellant was sitting in his cab. These actions could reasonably be viewed as more than being present; appellant was actively "aid[ing], or attempt[ing] to aid the other person to commit the offense."

15

TEX. PEN. CODE ANN. § 7.02(a)(2); *see also Cumpian v. State*, 812 S.W.2d 88, 90 (Tex. App.—San Antonio 1991, no writ) (evidence sufficient to support finding that appellant was party to burglary despite him not being found in possession of any money taken during burglary because there was evidence that appellant was at scene and acted as look-out person).

After the shootout with pursuers on the freeway, appellant exited the cab and fled with Mayweather to a nearby apartment complex. Appellant and Mayweather then hid together from the police huddled under a table with the bag of drugs and firearms. While flight alone will not support a guilty verdict, it is a circumstance from which an inference of guilt may be drawn. *E.g.*, *Holloway v. State*, 525 S.W.2d 165, 167 (Tex. Crim. App. 1975); *Santos v. State*, 961 S.W.2d 304. 305 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) ("Unexplained flight has long been deemed indicative of consciousness of guilt."); *Burks v. State*, 876 S.W.2d 877, 903 (Tex. Crim. App. 1994) ("Evidence of flight is admissible as a circumstance from which an inference of guilt may be drawn.").

Because we conclude that these circumstances, taken together, are legally sufficient to support the jury's finding that appellant possessed the cocaine at issue under the law of parties, we overrule appellant's first point of error.

## EVIDENCE OF "INTENT TO DELIVER" EVIDENCE

### A. Applicable Law

Intent to deliver can be proven by circumstantial evidence. *E.g.*, *Rhodes v. State*, 913 S.W.2d 242, 251 (Tex. App.—Fort Worth 1995), *aff'd*, 945 S.W.2d 115 (Tex. Crim. App. 1997). "An oral expression of intent is not required; intent can be inferred from the acts, words, and conduct of the accused." *Kibble*, 340 S.W.3d at 18 (citing *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995)). "Some factors to consider in determining intent include (1) the nature of the location where the defendant was arrested, (2) the quantity of drugs the defendant possessed, (3) the manner of packaging of the drugs, (4) the presence or absence of drug paraphernalia, (5) whether the defendant possessed a large amount of cash in addition to the drugs, and (6) the defendant's status as a drug user." *Id*. at 18–19 (citing *Williams v. State*, 902 S.W.2d 505, 507 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd)). These are factors for the Court to consider when reviewing the sufficiency of the evidence, but need not all be present. *See Branch v. State*, 599 S.W.2d 324, 325–26 (Tex. Crim. App. 1979). Expert testimony may be introduced to prove intent to deliver. *See Rhodes*, 913 S.W.2d at 251.

### B. Parties' Arguments

Appellant argues that there were no acts, words, conduct, or circumstances "from which intent to deliver could be inferred or established beyond a reasonable

doubt." He acknowledges that Officer Rogers testified that, "based on [his] training and experience" as a narcotics officer, a kilo of cocaine is not normally bought for personal use; it is indicative of distribution. He urges us to discount that testimony, however, because Officer Rogers was not designated as an expert. Without that testimony, appellant contends, the State has no evidence of intent other than the quantity of the cocaine. If the quantity itself was enough, appellant asserts, then the legislature would not have different statutes that impose different punishments for possession and possession with intent.

The State counters that "the sheer amount of cocaine, the lack of paraphernalia, and the circumstances surrounding the appellant's arrest" is ample evidence from which the jury could rationally find beyond a reasonable doubt an intent to deliver. It also argues that, given his experience as a narcotics officer, Officer Rogers's testimony is probative of intent to distribute.

### C. Analysis

We agree with the State that the jury's finding of "intent to distribute" is sufficiently supported by evidence of (1) the quantity of cocaine, i.e., a kilo brick, (2) testimony that a kilo of cocaine is worth about $20,000 - $25,000, (3) testimony that a kilo of cocaine is generally for distribution rather than personal use, and (4) the lack of any paraphernalia with the drugs. Our opinion in *Garcia v. State* is directly on point. 218 S.W.3d 756 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

The appellant in *Garcia* argued, as appellant does here, that there was no evidence of his intent to distribute cocaine. *Id.* at 762. Given the similarity between the evidence the jury heard in this case and the evidence we identified as sufficient in *Garcia*, our analysis in *Garcia* applies with equal force here:

> Deputy Coker, an experienced undercover narcotics officer in the Harris County Sheriff's Office . . . testified that the amount of cocaine possessed by appellant, more than 500 grams in the form of a brick, was more than people generally have for personal use and indicated that the appellant had likely intended to sell the cocaine. Additionally, no drug paraphernalia for the use of cocaine was found in the vehicle or on appellant's person. *See Mack* [*v. State*], 859 S.W.2d [526,] 529 [(Tex. App.—Houston [1st Dist.] 1993, no pet.)] (finding that absence of paraphernalia for smoking or using cocaine supports inference that accused intended to deliver, rather than consume, contraband). Texas courts have upheld convictions for intent to deliver with less evidence than that presented in the present case. *See Mack*, 859 S.W.2d at 528–29 (8.9 grams of crack cocaine, no drug paraphernalia, appellant arrested in known drug-dealing area, and expert testimony); *Branch v. State*, 833 S.W.2d 242, 245 (Tex. App.—Dallas 1992, pet. ref'd) (17 packets of cocaine weighing less than 28 grams, $732 in cash, no drug paraphernalia or other signs of drug use, and expert testimony). The evidence in this case satisfied enough of the factors considered in establishing that the appellant had the intent to deliver.

*Id.* at 764.

We note that appellant cites no authority for the proposition that Officer Roger could not testify as to indicators of a defendant's intent to distribute. Officer Rogers established his experience and qualifications as a narcotics officer, and the trial court admonished him to only answer questions if he personally knew the answer from his training and experience.

19

Because there is legally sufficient evidence of an intent to distribute, we overrule appellant's third point of error.

## INSTRUCTED VERDICT

### A. Applicable Law

"A complaint about the denial of an instructed verdict is reviewed as an attack on the sufficiency of the evidence." *Sutton v. State*, 35 S.W.3d 737, 739 (Tex. App.—Houston [1st Dist.] 2000, pet. dism'd) (citing *Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993); *Youens v. State*, 988 S.W.2d 404, 407 (Tex. App.—Houston [1st Dist.] 1999, no pet.)).

### B. Parties' Arguments

Appellant argues that the trial court erred in denying his motion for instructed verdict because the evidence was insufficient that he committed the charged offense. Appellant relies upon his arguments in his first two points of error, and additionally argues that there was "insufficient evidence presented by the State in support of its allegation that Appellant used or exhibited a deadly weapon, namely a firearm, during the commission of the charged offense. He notes that while Mohiuddin testified that "Mayweather exhibited a firearm in the immediate flight from the offense by Mr. Mayweather," Mohiuddin never testified to seeing appellant with a firearm. Because, appellant asserts, there is no evidence to prove that he was a party to any offense committed by Mayweather, "who, at all

20

times, maintained possession of the black office-type bag that was recovered and which contained the narcotics and two firearms, then the evidence is likewise insufficient to support the Jury's finding that Appellant used or exhibited a deadly weapon during the commission of the charged offense or during immediate flight therefrom."

The State does not address these arguments, instead asserting that because "a challenge to the trial court's denial of the appellant's motion for instructed verdict is a challenge to the legal sufficiency of the evidence, this Court need not address appellant's third issue separately from his first."

## C. Analysis

We have addressed appellant's arguments regarding the jury's finding of possession and intent to deliver with his first two points of error. For the same reasons that we overruled those points of error, we hold that the trial court did not err by denying his motion for instructed verdict on those issues. His argument as to why the jury's finding that he used or exhibited a firearm is not supported by sufficient evidence is wholly dependent upon his argument that there is no evidence that he was a party to Mayweather's offenses—an argument that we rejected in addressing his first point of error. The trial court did not err in denying his motion for instructed verdict on the jury's firearm finding because it is

undisputed that Mayweather used or exhibited a firearm, and we have already held that appellant was a party to that offense.

We overrule appellant's third point of error.

**CONCLUSION**

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.

Do not publish.   TEX. R. APP. P. 47.2(b).