### J. P. CANNON v. THE STATE.

#### No. 5229.　Decided January 29, 1919.

**1.—Assault to Murder—Statement by State—Practice in District Court.**

A defendant may demand of the State to make a statement of its case before the introduction of testimony, and require it to develop its case upon' the original showing, so that the defendant on his defensive propositions would. have the State's full case to meet.

**2.—Same—Self-defense—Defense of Another—Charge of Court.**

Where, upon trial of assault to murder, the evidence showed two separate assaults or transactions, in the first of which defendant acted in the defense of his father, and in the second in his own defense only, the court should have submitted these phases of the case in proper separate charges applicable to the facts, and the court's charge which submitted in a general way that if defendant shot to defend himself or in defense of another was insufficient, and reversible error.

**3.—Same—Aggravated Assault—Charge of Court.**

Where, upon trial of assault with intent to murder, the evidence in one

phase of the case raised the issue of aggravated assault the court should have submitted a charge thereon.

**4.—Same—Argument of Counsel—Practice on Appeal.**

Where the argument of State's counsel was not based on the evidence and contained other inflammatory matter, the same should have been promptly suppressed by the trial court.

Appeal from the District Court of Hardin. Tried below before the Hon. J. Llewellyn.

Appeal from a conviction of assault to murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*F. J.* and *R. C. Duff,* for appellant.—On question that the State should place the witnesses on the stand whose testimony would fully develop the case: Hunnicutt v. State, 20 Texas Crim. App., 632; Thompson v. State, 30 id., 325; Reddick v. State, 72 Miss., 1008; art. 697, White's Code of Criminal Procedure; Branch's Ann. Penal Code, sec. 188, p. 118.

On question of court's charge: Arcia v. State, 28 Texas Crim. App., 198; Knight v. State, 64 Texas Crim. Rep., 541, 144 S. W. Rep., 967; Green v. State, 32 Texas Crim. Rep., 298.

On question of argument of counsel: Hemphill v. State, 72 Texas Crim. Rep., 638, 165 S. W. Rep., 462; Morris v. State, 206 S. W. Rep., 82.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction was for assault to murder, the punishment being assessed at five years confinement in the penitentiary.

There are several questions suggested for revision. The State introduced an eyewitness whose name was Herring. He testified to the facts and circumstances of the difficulty. His testimony would show a sudden trouble, and a shooting in consequence of it that might suggest an assault to murder, or not more than an aggravated assault. The evidence tends to show that a conversation occurred between the father of defendant and the alleged assaulted party, McLaughlin, about some papers, money, etc., that McLaughlin claimed that the elder Cannon surreptitiously took from the estate of J. W. Davis, deceased. At this juncture he says appellant, who was in an adjoining room, stepped into the door and fired a couple of shots at McLaughlin, breaking his arm. These shots were fired with a shotgun. He further states that McLaughlin left the house and fled into the street. That appellant secured a pistol from somewhere about his bed and undertook to follow McLaughlin; that he, Herring, tried to prevent it, but finally appellant succeeded in freeing himself and followed McLaughlin, and fired several times at him with the pistol. The State rested its case, whereupon appellant moved the court to require the State to place the wit-

ness McLaughlin on the stand. The bill of exceptions shows that the demand was made to the effect that the State complete its case upon its original showing and not develop part of it at the beginning, and then under the theory of rebuttal testimony develop a case, under the State's contention, that would show premeditation in getting McLaughlin to the place where he was shot for the purpose of killing him. Without going into a detailed discussion of this matter, we are of opinion defendant may demand of the State to make a statement of its case before the introduction of testimony, and require it to develop its case upon the original showing, so that the defendant on his defensive propositions would have the State's full case to meet. This much is said in view of another trial. The statute gives defendant the right to have the State make a statement of its case, and a refusal to make such statement, if probable injury is shown, or probably resulted, would constitute ground for reversal.

The court charged the jury on the law of self-defense, that if appellant shot to defend himself or in defense of another, he would be entitled to an acquittal. This is the substance of the charge. There is no evidence in this record that appellant shot to defend himself against McLaughlin, in the first assault. McLaughlin was not making any demonstration toward him, and the self-defense theory was in the case alone on the evidence to the effect that appellant shot because he believed McLaughlin was making, or about to make, an attack upon his father, with something that he held in his hand at the time he believed to be a club. There is no place for a charge on self-defense of appellant so far as that part of the difficulty is concerned in favor of himself. The self-defense proposition arises alone on this theory of the case from the fact that appellant believed that McLaughlin was attacking his father and it was necessary for him to shoot. There is no evidence that suggested this theory. The error is considered to be reversible.

As heretofore stated, when appellant fired the shots in the house at McLaughlin, McLaughlin fled. Appellant followed him with a pistol. The issue of self-defense, if raised at all, had no connection with the father after McLaughlin left the house. The issue of self-defense on the part of appellant and in his favor arose after they left the house. Appellant testified that McLaughlin turned toward him a time or two after they left the house as if to fight him. Whether the issue of self-defense arose or not after leaving the house, the charge should have confined it to appellant after leaving the house and not to the original difficulty in the house. His father was not present and not having anything to do with the difficulty after that which occurred in the house. So the case presents itself from two standpoints of self-defense: In the house, in favor of appellant, who was trying to protect his father, and after so leaving only in favor of defendant. After McLaughlin left the house there is no testimony indicating that his father was involved in the matter as to the subsequent shooting. So we have two issues sharply

drawn: one of defense of his father in the house, and self-defense of himself outside of the house.

Appellant further contends that he could not be guilty of an offense higher than aggravated assault. The evidence for the defendant showed that McLaughlin said to appellant's father that appellant's mother, and the wife of his father, had been sustaining the relation of wife both to appellant's father and to the deceased, Davis. This was said previously to the shooting in the house. This constituted statutory cause for manslaughter, if a killing occurred, and in the absence of a killing an aggravated assault. After appellant left the house there were two questions presented so far as this phase of the case was concerned: First, self-defense as against McLaughlin, and aggravated assault on account of the language immediately before leaving the house. The question of cooling time did not arise. The issue of self-defense, therefore, arose in appellant's favor only for shooting McLaughlin in the house as against an attack on his father. This did not arise on the outside of the house because his father was in no danger and had ceased to be a party to the transaction. The self-defense on the outside of the house arose only in connection with appellant, and the aggravated assault arose on account of the language used by McLaughlin in relation to appellant's mother as well as from the other facts.

Exception was taken to the language of one of the prosecuting attorneys. These are shown by bills of exception. The first bill reserved to the language of the prosecuting attorney is as follows: "You ought to convict this defendant and send him to the penitentiary for fifteen years, I say, the time has come in Hardin County when the citizens will rise up and say, 'We won't have our citizens butchered in any such manner.'" Appellant objected and requested the court to instruct the jury to disregard this language, which the court refused. The next bill recites that the same attorney used this language: "Gentlemen of the jury, if you suspend this man's sentence and let him go loose, he may kill me or you, my life or your life will be in danger." Upon request of appellant the court refused to instruct the jury to disregard this language. The third bill recites that the same counsel stated that "everybody was telling McLaughlin that Pete Cannon had caused the death of John W. Davis, and that there was such a suspicion that they, Pete Cannon, his wife and the defendant, J. P. Cannon, were connected with the death of John W. Davis, that shortly afterwards they left the State of Texas and went to New Mexico to live." Appellant objected because there was no evidence of any such facts, and the same was inflammatory and calculated to inflame the minds of the jury, and moved the court to instruct the jury not to regard this language, and this the court refused. This language should not have been used, and especially that stated in the third bill of exceptions. There was no evidence to sustain such argument. Upon another trial such remarks will not be indulged, and the court should promptly suppress illegitimate argument based upon facts not introduced in evidence, and

to which the attorney, if he saw proper to testify, should have taken the witness stand. There was no evidence to justify such comments.

For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*