JIM STELMAN v. THE STATE.

No. 15700.   Delivered March 29, 1933.
Reported in 58 S. W. (2d) 831.

The opinion states the case.

*J. R. Anderson,* of Center, *John Henry Minton,* of Hemphill, and *C. S. Ramsey,* of San Augustine, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, ninety-nine years in the penitentiary.

From the testimony we judge appellant was a contractor, having a lot of teams, and that deceased was working for him. It was shown in the testimony that appellant was indebted to deceased several hundred dollars, and the inference is strong that deceased was trying to collect the debt. Appellant had tried to borrow the money from parties who testified.

Discussing the points raised in the order they appear in appellant's brief, we observe that complaint is made of the admission of statements of appellant to one Burnaman, which statements were made while appellant was in jail, the objection being that he was unwarned, in custody, etc. The state's claim was that all the statements were admissible by reason of the fact that part of same were found to be true, and that same conduced to show appellant's guilt. In the early case of Owens v. State, 16 Texas App., 448, it is said that if but one fact be stated by the defendant while in custody, etc., which is inculpatory of him and conduces to show his guilt, the whole confession will be admissible, if as a result of this statement this one fact be found

to be true. We find the principle discussed at length in Weller v. State, 16 Texas App., 208. The holding in the Owens case, supra, is approved in Collins v. State, 20 Texas App., 419; Terrence v. State, 85 Texas Crim. Rep., 312, and others. Appellant insists that all facts stated by him to Burnaman, which might be deemed inculpatory, had already been discovered at the time he made the statement. He is mistaken. Without enumerating or discussing all of the facts so stated, appellant told Burnaman that deceased was shot in the back of the head with a shot gun. At the time this statement was made the body of deceased had not been dug from the place where appellant said he and Johnson put it. During that same day, and after Burnaman had gone from the jail to the point in the woods where the body of deceased was buried, it was exhumed, and it was then found that deceased had been shot in the back of the head with a shot gun. There may be other facts also found to be true, but the one mentioned is enough to make admissible the whole of the alleged confession.

We see no error in the admission of the testimony as to tracks, under the facts in this case. Appellant was shown to have been a large man with some peculiarity in his gait, and witness Nugent said he knew appellant's track. Another witness who had recently put a half sole on appellant's shoe, thus identified appellant's track. Johnson's track was identified by reason of having a torn sole on one shoe. Witnesses testified to the softened condition of the ground made so by recent rains, and that they saw Johnson and deceased start hunting, and saw them go into an old logging road leading into the woods, and in said woods, not far from said road, the body of deceased was later found buried. They testified that soon after Johnson and deceased left going along said road appellant was seen going toward where said road entered the woods, carrying a shot gun. It was shown that that afternoon appellant bought two shot gun shells loaded with buck shot, from a witness, stating at the time that he wanted to go squirrel hunting. Upon witness observing that buck shot were not good to hunt squirrels with, appellant said it did not make much difference as he was not much of a shot. It was also shown that that same afternoon appellant drove three miles over to an adjacent village and bought seven shot gun shells loaded with No. 8 shot; that he borrowed a shot gun, and after having thus obtained these articles he was seen going rapidly toward the old road down which Johnson and deceased had gone into the woods. The tracks of Johnson and deceased, followed by a

larger track identified as that of appellant, which latter was observed often to be made in and upon the tracks of the other two, were followed down to a point in the woods where the trampled condition and other indications testified to, showed where men had sat down and where a whisky bottle was found, and some yards distant the body of deceased was later found covered with earth and so concealed by brush and leaves as to be difficult of location. In his statement made in jail appellant admitted that he was present when deceased was killed, and that he and Johnson buried the body the next morning, but he denied having fired the shot, or having known before hand that Johnson was going to kill deceased.

The court below should have charged on circumstantial evidence. The only thing in this case upon which might rest a conclusion that the case was one of direct evidence, was the statement of appellant which was introduced by the state. In same, however, appellant told how he came to let Johnson have his shot gun, and said that as they were going through the woods Johnson told deceased to walk in front, and then without warning Johnson raised up the gun and shot deceased. Appellant said he did not know Johnson was going to do this, but on the contrary affirmed that Johnson had gotten the gun from him on the pretense of using it to shoot squirrels. It thus appears clear that the statement of appellant did not take the case out of the rule of circumstantial evidence. There were many circumstances introduced by the state raising the inference that appellant had motive to remove deceased. Appellant and Johnson had been down in the same old road in the woods Monday before the killing Tuesday; Monday appellant and Johnson left a shovel near the point in the woods where the body of deceased was found buried; Johnson and deceased had only a 22 rifle when they went down this same road Tuesday afternoon; at a point not far from where the body was found buried Johnson and deceased sat down and waited until appellant came up with his shot gun. It was also in evidence that appellant came back to camp and told people there that he had sent deceased off to look for work in the old fields, and that he was not coming back. The next morning appellant and Johnson were observed together by a witness who asked appellant what made him so hot, and appellant said he had been down in the woods with Johnson. This witness said he asked appellant where deceased was and appellant informed him that he was supposed to be down near the railroad track. The indebtedness of appellant to deceased was shown. No motive on the

part of Johnson for killing deceased is suggested in the record. However, the fact that appellant himself killed deceased, or that he aided or advised Johnson to kill him, or that he furnished any weapon, etc., was but an inference, and the court should have charged on circumstantial evidence under all the authorities. .

The state in proving what appellant said to Burnaman drew out several statements, in effect, that Johnson did the shooting without connivance on appellant's part. In such case the trial court in appropriate terms should have called the jury's attention to this fact, and should have told them that unless it was shown by other testimony that this was not true, they should acquit; or else the court should have instructed the jury affirmatively on the defensive issue thus made by the state's own testimony. The authorities seem to be all one way. Just why the state should put into the record the exculpatory parts of appellant's alleged confession, is not quite clear, but they did so. The court's charge on the converse of principals is wrong. It was as follows: "If you find from the evidence that the defendant, Jim Stelman, alone, or acting together with Jess Johnson as a principal as the term principal has hereinbefore been defined to you, did *not* kill Guy Lucas as alleged in the indictment, or if you have a reasonable doubt thereof, you will find the defendant not guilty."

However, we do not see how this could have harmed appellant.

For the error mentioned, the judgment is reversed and the cause remanded.

*Reversed and remanded.*