Terry Gene SIMMONS, Appellant,

v.

The STATE of Texas, Appellee.

No. 46966.

Court of Criminal Appeals of Texas.

Jan. 23, 1974.

Rehearing Denied Feb. 13, 1974.

Jimmy R. James, Houston (Ray E. Moses, Houston, of counsel), for appellant.

Carol E. Vance, Dist. Atty., James C. Brough and Rick Stover, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

This appeal is from a conviction of murder with malice. Punishment was assessed at ninety-nine (99) years and a day.

The record reflects that on August 2, 1971, during the afternoon, the home of Mrs. Margaret Cook in Houston was burglarized. The next morning, Mrs. Cook left her home at about 9:00 A.M., leaving her daughter Martha, 16 years old, asleep in bed. The doors were locked when Mrs. Cook left the house. At about 12:15 P.M.,

Mrs. Cook returned to her home. She found the utility room door unlocked, the phone off the hook, the television set gone, the sheets were off of Martha's bed, and Martha was gone. Mrs. Cook never saw her daughter, Martha, alive again.

On August 6, 1971, appellant was arrested for the burglary of the Cook home. While in custody, and after being duly advised of his rights by a magistrate and the arresting officers, he admitted orally to the burglaries and to being surprised during the second burglary by deceased, and to killing her by drowning her in water. He directed the officers to a point on Green's Bayou in Harris County where he said he had tied her hands together behind her back, tied the stolen television set to her body, and had thrown her, while alive, into the bayou and had sat on her until she died. The body of Martha Cook, with her hands tied behind her, was subsequently found by the officers floating in the running stream about three miles from the spot where appellant admitted placing her in the water.

After appellant was returned to the police station he made a written confession to practically the same facts as he had previously orally admitted.

A qualified pathologist performed an autopsy, and testified that deceased died as the result of drowning, and that the partially decomposed condition of parts of the body were consistent with exposure in the water for a period of three to four days.

■ Appellant's initial complaint is that the court erred in denying a motion to quash the indictment because of systematic exclusion of qualified persons of 18 to 20 years old from service on the grand jury in Harris County. The indictment in this case was returned on August 17, 1971, at a time when persons under the age of 21 years were not authorized to vote in Texas, and, therefore, were not eligible to sit on grand juries. Tibbetts v. State, Tex.Cr.App., 494 S.W.2d 552; Art. 19.08, Ver-

non's Ann.C.C.P. In Tibbetts, we determined that Art. 5.10, Vernon's Ann.Tex. Election Code, V.A.T.S., reducing the minimum voting age to 18 years, became effective August 30, 1971, and held that only since that date have citizens between 18 and 21 years of age been eligible to qualify as grand jurors. See also Shelby v. State, Tex.Cr.App., 479 S.W.2d 31; McCrea v. State, Tex.Cr.App., 494 S.W.2d 821.

The first ground of error is overruled.

■ Appellant's second complaint is that the trial court erred in allowing the State, over objection, to challenge for cause prospective jurors with conscientious scruples against inflicting the death penalty, citing Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776. In Solis v. State, Tex.Cr.App., 492 S.W.2d 561, we held that Witherspoon is not applicable where the death penalty is not imposed, citing Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797; Hinkle v. State, Tex.Cr.App., 442 S.W.2d 728; Parks v. State, Tex.Cr.App., 437 S.W.2d 554. See, also, Akridge v. State, Tex.Cr. App., 493 S.W.2d 928. The ground of error is without merit.

Appellant's grounds of error numbers three, four and five relate to the admission and voluntariness of his confession. The grounds are as follows:

"Defendant's Point of Error No. 3

"The trial court erred in refusing to suppress the defendant's confession in view of the evidence which showed it to be involuntary and inadmissible as a matter of law.

"Defendant's Point of Error No. 4

"The trial court erred in overruling defendant's motion to suppress his confessions which were taken in the 'planned absence of counsel.'

"Defendant's Point of Error No. 5

"The trial court erred in failing to grant the defendant's motion to suppress his

confession because it was tainted by his illegal detention resulting from his illegal arrest."

Prior to the trial, appellant filed his motion to suppress any oral and written confessions made by appellant. During the trial, and prior to the offering by the State of any testimony concerning confessions, a hearing was had before the court in the absence of the jury on such motion to suppress. The record of this hearing covers three hundred pages of testimony and many exhibits.

The evidence adduced at the hearing reflects that appellant was arrested on an arrest warrant at his home in Houston about 7:35 P.M. on August 6, 1971. At that time, he was charged with burglary of the Cook home on August 3. The arresting officers at the time of the arrest read to appellant the "blue card" Miranda type warning,[1] and according to their testimony same was fully explained to him, and he told them that he fully understood. Appellant was taken to a magistrate within 30 minutes after his arrest who read and explained to him his rights as provided by Art. 15.17, V.A.C.C.P. Appellant was asked by the magistrate if he understood the warning, and he replied that he did. Appellant was then taken to the police station, where officers interrogated him. He was again given the "blue card" warning by officers, which included his rights to counsel, and to remain silent, and was asked if he wished to use a telephone. He stated he did not want to have a lawyer, and did not care to make a phone call. At first he denied his guilt, and at about 9:30 P.M. agreed to take a lie detector test. When he was taken to the polygraph room preparatory to executing a written agreement, and after the lie detector test was explained to him, he admitted his guilt of the burglary and murder orally to the polygraph operator. He stated that he had gone to the Cook home on his bicycle on August 2nd, entered it, and stolen some

money. He returned in his mother's car on the next morning to get a television set. While in the house, he was surprised by the deceased, Martha Ann Cook. He tied her to the bed with some electrical cord, then, fearing that she could identify him and that she had seen the car license, he took her and the television set to a place on Green's Bayou in Harris County, tied her hands behind her back and to the television set, and rolled her into Green's Bayou, where he sat on her until she drowned. Appellant then offered to take the officers to the place where he had drowned deceased.

According to the evidence of the peace officers, shortly after 11:30 P.M., appellant, in a car with several officers, directed the officers to a location on Green's Bayou which he described as the place where he drowned deceased. After a search, a knob from a television set, identified as similar to that stolen from the Cook home, was found on the bank of the stream. Subsequently, on the afternoon of August 7, as the result of the information furnished by appellant, the body of deceased was found about three miles down stream from the spot where the search started. Her hands were tied behind her back, and the body was partially decomposed.

At about 1:00 A.M. on August 7, hours before the body was found, appellant was taken back to the police station, where the Miranda warning was again given him by the investigating officers. He was asked if he wanted to have a lawyer present, and he expressly waived the presence of one, as well as the other rights specified in the warning. Thereafter, appellant agreed to make a written statement and did make one, confessing to the commission of the burglaries of the Cook home on August 2nd and 3rd, the taking of deceased to Green's Bayou, and the drowning of deceased, practically as he had stated in his previous oral confession. The confession,

---

1. The blue card containing the Miranda warning was made an exhibit, as is contained in the record.

containing the usual warning and waiver of rights, was typed, read to appellant, who stated that he understood it, and signed by him in the presence of two television newscasters, who witnessed the signing.

Appellant testified at the hearing. He stated that he had been taking heroin with regularity about two and a half years. He went to a methadone clinic in Fort Worth in May, 1971, and received treatment; however, he remained an addict. He had an overdose of heroin on the evening of August 4, 1971, and was taken to a hospital. He was arrested there on a heroin charge, and made bond on August 5. His last "shot" of heroin prior to his arrest on August 6 was on the afternoon of the previous day. He was beginning to feel the need of another shot while under arrest at about 9:30 P.M., and started suffering the symptoms of heroin withdrawal. He remembered being arrested on August 6, and of being warned of his rights by the magistrate, and of being questioned by police officers. He had not had anything to eat from noon, August 6, until 3:30 or 4:00 the next morning. He asked to get in touch with his mother, but his request was ignored. He knew he had a lawyer in his heroin case, but did not ask to talk to him. He made no complaints of heroin withdrawal symptoms to the officers. He denied having volunteered to take a lie detector test. He testified that he had denied participating in the burglary case, and of any knowledge of the whereabouts of Martha Ann Cook, until he was taken in the polygraph room, and that he was influenced to make the statement he made by the heroin withdrawal symptoms and the presence of the polygraph machine, and by the statements of the operator that he had left fingerprints in the Cook home, and that money stolen from that home had been traced to him. He stated that he was forced to take the officers out to Green's Bayou, and denied agreeing to do so. He said the officer taking the oral confession agreed to drop the heroin charge if he would admit the burglary of the Cook home. He denied having made any confession voluntarily.

Attorney John Swain, a defense witness, testified that he was employed on August 5 to represent appellant on the heroin charge. About 9:30 P.M. on August 6, while he was at a social event, he was notified of appellant's arrest. The witness went to his home and called the police department. He did not remember whether he talked with a lady or man, but he testified that he was told that the party he was talking with didn't know whether appellant had been "talked with," and that he was either asleep or in a cell for the night. Swain told the party he would come to the station the next morning, and hung up. He went to the jail on the morning of August 7th, and learned of the confessions. He stated that he was never denied the right to see and talk with appellant.

A licensed polygraph operator, in answer to a hypothetical question which assumed the truth of the testimony given by appellant, and also included certain testimony of State's witnesses, testified that under the facts as stated in such question, in his opinion, appellant would have been likely to have his resistance to confess overborne when confronted with the polygraph machine.

Dr. Samuel George, a psychiatrist, testified in answer to a hypothetical question which assumed the truth of appellant's testimony, that in his opinion a person as described in the question would not be aware of what he was agreeing to, and not able to withstand interrogation.

Dr. Raeburn corroborated appellant's testimony that appellant was in his methadone clinic in Fort Worth; however, he fixed the date as June 12, 1971.

For the State, a number of peace officers who had had experience in dealing with persons under the influence of heroin, and who had participated either in the arrest of appellant on August 6 or the subsequent interrogation of him during that

night, testified that they noticed nothing about appellant's appearance or actions which might indicate that he was suffering from heroin withdrawal symptoms. The news broadcasters who witnessed the confession also testified to this effect. In the opinions of these officers and witnesses to the statement, appellant was not suffering from such symptoms.

In his written findings of fact and conclusions of law, the court found that, prior to the making of the oral and written confessions, appellant was taken without unnecessary delay before a magistrate, who properly warned him of his rights as provided in Art. 15.17, V.A.C.C.P., and that he was again advised of his rights prior to making the oral and the written confession by the officers to whom such confessions were made. The court found that the oral confession contained statements of fact leading to the finding of the body of deceased. The court found that both statements were voluntarily given in accordance with law, and that they were admissible in evidence.

The record contains ample evidence to support the findings of the trial court, who, as the trier of the facts at the hearing, was free to disbelieve defense testimony. Gutierrez v. State, 502 S.W.2d 746, (Tex.Cr.App.1971); Chivers v. State, Tex.Cr.App., 481 S.W.2d 125. There was sufficient evidence for the court to conclude that the statutory and the Miranda type warnings were adequately and timely given appellant, and understood by him; that appellant was capable of making and did knowingly make an intelligent and voluntary waiver, and that neither the oral nor the written confession was obtained by means of a "third degree" interrogation. As to the oral confession, the evidence discloses that the body of deceased was found as the result of the information furnished by appellant, and that he voluntarily directed the officers to the area in which the body was found about three miles down stream from where appellant stated he had thrown it in the flowing bayou. Under the

evidence, the court properly admitted it. Art. 38.22, Sec. 1(e), V.A.C.C.P.; Chase v. State (No. 46,796, Jan. 16, 1974); Stelman v. State, 123 Tex.Cr.R. 330, 58 S.W.2d 831.

Appellant contends that his confessions were "tainted by his illegal detention resulting from his illegal arrest." He argues that the affidavit upon which the warrant of arrest was based was insufficient to show adequate cause. It is not necessary that we decide the sufficiency of the affidavit. "A confession otherwise shown to have been voluntary is not rendered inadmissible by the fact that its author was under arrest or in custody at the time, even though the arrest may have been under invalid process or without any process or legal right." Morgan v. State, 502 S.W.2d 722, (Tex.Cr.App., 1973), citing Lacefield v. State, Tex.Cr.App., 412 S.W.2d 906. An examination of the evidence, supra, reflects that there was ample reason to detain appellant, and his detention did not vitiate the confessions. Hughes v. State, Tex.Cr.App., 409 S.W.2d 416; Dugger v. State, Tex.Cr.App., 402 S. W.2d 178.

Appellant further complains that the confessions were taken in the "planned absence of counsel." The evidence of attorney Swain, a defense witness, heretofore summarized, does not support this contention. Swain testified that when he heard of the arrest of appellant he went to his (witness's) home, phoned the jail, did not know to whom he was talking, but that person told him he (or she) did not know whether appellant had been questioned, and that he was in his cell, and that Swain told this person he would be down in the morning. No further investigation was made that night by him.

The record shows that appellant understood his rights concerning legal representation, and that, so understanding, he on several occasions while under arrest and knowingly expressly waived such right. See Nash v. State, Tex.Cr.App., 477 S.W. 2d 557.

Appellant in his brief makes a number of specific complaints which he says rendered the confessions inadmissible. We have given each of them careful consideration, and find them to be without merit.

Grounds of error three, four and five are overruled.

In his ninth ground, appellant alleges error in the court's failure to include the words "or any evidence obtained as a result of the confession or statement" in his charge on the issue of the voluntariness of appellant's confessions.

Appellant requested that the charge include an instruction on the fact issue of voluntariness of the confession that, unless the jury believed beyond a reasonable doubt that the confession was voluntarily made, it could not consider the confession or statement for any purpose, *nor could the jury consider any evidence obtained as a result of the confession or statement.* See Art. 38.22, Sec. 2, V.A.C.C.P. The court did charge on the issue of voluntariness as provided in said Article, except the charge did not include the phrase "nor could the jury consider any evidence obtained as a result of the confession or statement."

The appellant did not testify before the jury. Although medical testimony was introduced of the effects of the excessive use of heroin by way only of hypothetical questions, there was no evidence before the jury that appellant was suffering from such use during the time he was under arrest. We have carefully searched the record, and we do not find any evidence admitted before the jury raising the issue of voluntariness. Although the cautious trial judge at appellant's request did charge on this issue, it would not have been error if he had failed to do so. Morgan v. State, 502 S.W.2d 722, (Tex.Cr.App., 1973); Flanagan v. State, Tex.Cr.App., 465 S.W.2d 755; Mosley v. State, Tex.Cr.App., 494 S.W.2d 557. Hence the court did not err in failing to instruct the jury as alleged in the ninth ground of error.

In his tenth ground, appellant complains because the court refused to charge on the presumption of involuntariness with reference to an initial finding of involuntariness of a prior confession. Appellant relies on Cavazos v. State, 146 Tex.Cr.R. 144, 172 S.W.2d 348. In this case, the court, after finding that a prior confession was inadmissible because not voluntarily made, reversed because of the failure to give such charge.

However, in the instant case we have failed to find evidence raising the jury issue of involuntariness of appellant's oral confession. Cavazos, supra, is not applicable, and the court did not err in refusing this charge.

In his sixth ground, appellant says that the court erred in permitting the State to make its opening statement to the jury after having presented evidence. The record shows that prior to the commencement of the trial the court had granted appellant's request to require the State to make an opening argument, as provided in Art. 36.01, V.A.C.C.P. The State, nevertheless, without objection placed the witness Mrs. Margaret Cook on the stand, and after brief testimony the court stopped the proceedings, and in the absence of the jury asked appellant's counsel if he wished the State to make its opening statement. Counsel refused to take a position, and the court directed the State to make an opening statement to the jury. This was then done over appellant's objection. We perceive no error in the court's action. See Hill v. State, Tex.Cr.App., 403 S.W.2d 421; Bell v. State, 80 Tex.Cr.R. 475, 190 S.W. 732; Cannon v. State, 84 Tex.Cr.R. 479, 208 S.W. 660. The ground of error is overruled.

In his seventh ground, appellant complains of the admission in evidence, over objection, of extraneous burglary and theft offenses and an extraneous marihuana offense.

The burglary and theft offenses complained of occurred the day before the

murder, as shown by appellant's oral and written confession. He first burglarized the Cook residence on August 2, 1971, and returned on August 3rd to get property he couldn't carry away on his bicycle the preceding day. It was on the occasion of the second burglary that he was surprised by the deceased, and took her off and drowned her. Evidence so interconnected with the commission of the instant offense cannot be separated, and is admissible as res gestae to show the context in which the murder occurred. Albrecht v. State, Tex. Cr.App., 486 S.W.2d 97; Johnson v. State, Tex.Cr.App., 379 S.W.2d 914; Robins v. State, Tex.Cr.App., 387 S.W.2d 62.

■ As to the extraneous narcotics cases, the State, in questioning one of the officers concerning the making of the written confession by appellant, inquired whether the officer told appellant that if he made a statement the marihuana case would be dismissed. Immediately prior thereto, the State had made the same inquiry with reference to a heroin case, which was answered in the negative by the witness without objection. The appellant did object to the question concerning a promise to dismiss a marihuana case, and such question was not answered. The court instructed the jury not to consider this question, but overruled a request for a mistrial. We perceive no error in the court's ruling. In view of the fact that appellant introduced evidence by appellant's mother of the narcotics violation, no harm resulted from the State's question. Beard v. State, Tex.Cr.App., 481 S.W.2d 875; Keener v. State, 456 S.W.2d 912. The seventh ground of error is overruled.

■ The eight contention is that the prosecution suppressed exculpatory evidence relating to the critical issue of identification of appellant. Appellant made a timely pretrial request for discovery of exculpatory evidence pursuant to Art. 39.14, V.A.C.C.P., and Brady v. Maryland, 378 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215.

In this case, the witness who appellant claimed was known to the State but was not disclosed to appellant was discovered by appellant before the end of the testimony, and testified at length as a defense witness. We quote as follows from the opinion of Judge Onion, speaking for the Court in Means v. State, Tex.Cr.App., 429 S.W.2d 490, 496:

"If appellant's counsel, of course, actually knew the facts which were withheld, appellant cannot now seek relief on the basis of the State's failure to disclose the same facts. See Thomas v. United States, 343 F.2d 49 at pp. 54–55, 9th Cir., 1965; United States ex rel. Thompson v. Dye, 221 F.2d 763 at p. 767, 3rd Cir., cert. denied, 350 U.S. 875, 76 S.Ct. 120, 100 L.Ed. 773. Therefore, even if we were to conclude that the actions of the State's attorney constituted suppression of the evidence, which may have had an effect on the outcome of the trial, still reversible error is not shown in view of the fact that appellant has failed to show that he did not know the results of the test involved before the receipt of the jury verdict at this one stage trial."

See, also, Chappell v. State, Tex.Cr.App., 489 S.W.2d 923; Graham v. State, Tex. Cr.App., 486 S.W.2d 92; Harris v. State, Tex.Cr.App., 453 S.W.2d 838; Evans v. State, Tex.Cr.App., 444 S.W.2d 641.

Under the circumstances of the instant case, the eighth ground of error is overruled.

The thirteenth ground alleges error in the failure of the court to instruct the jury concerning the offense of murder without malice at the guilt stage.

■ Since the court at the guilt stage charged on murder with malice, he should have given a charge on murder without malice if such issue was raised by the evidence. Lucky v. State, Tex.Cr.App., 495 S.W.2d 919. The charge on murder without malice is mandatory only in cases

where there is evidence that the defendant acted under the immediate influence of sudden passion arising from an adequate cause. Art. 1257c, Vernon's Ann.P.C.; Machado v. State, Tex.Cr.App., 494 S.W. 2d 859; Corbett v. State, Tex.Cr.App., 493 S.W.2d 940; McGee v. State, Tex.Cr.App., 473 S.W.2d 11; Garza v. State, Tex.Cr. App., 479 S.W.2d 294. We find no evidence in the record requiring a charge on murder without malice. The ground of error is overruled.

In his eleventh, twelfth and fourteenth grounds, appellant claims error in the court's failure to charge the jury that police officers are to be tested by the same standards of credibility as other witnesses; failure to instruct the jury on the weight to be given testimony of expert witnesses; and failure to instruct that the jury should not be influenced by the number of objections raised by defense counsel.

The court gave the customary instructions that the jurors were the exclusive judges of the facts proved, the credibility of the witnesses, and the weight to be given to the testimony. These requested charges, if given, would have been on the weight of the evidence, and were properly refused.

The fifteenth ground alleges that the court erred in refusing to charge at the punishment stage, pursuant to Art. 36, V. A.P.C., that the jury could consider intoxication produced by the voluntary use of dangerous drugs, narcotics, or a combination thereof, in mitigation of punishment.

The instruction requested by appellant and refused by the court concerned the appellant being in a state of temporary insanity at the time of the offense. The objection was directed at the failure to submit a charge on temporary insanity.

The record in this case contains over two thousand pages of testimony. Appellant, in his half page devoted to this ground, has failed to specify or direct us to the testimony which, as he contends, raises an issue of temporary insanity at the time of the commission of the offense. As stated by Presiding Judge Onion, speaking for the Court, in Thomas v. State, Tex.Cr. App., 468 S.W.2d 90, on p. 91:

"This Court, with its heavy caseload, should not be compelled to search through a record while speculating just what evidence the appellant might have in mind. McElroy v. State, Tex.Cr.App., 455 S.W.2d 223. Nothing is presented for review."

See, also, Art. 40.09, V.A.C.C.P.

The fifteenth ground of error is overruled.

In his sixteenth ground, appellant contends the court erred in refusing to grant his motion for a mistrial after the prosecutor injected an extraneous offense into his final argument at the guilt stage. The part of the argument objected to was a remark of the prosecuting attorney wherein he stated: "I don't know whether it [the autopsy] would show whether Martha Cook was raped or not . . ." An objection to this argument was sustained, and the jury was told to disregard it. A motion for a mistrial was overruled.

In his confession, appellant stated that after he had been surprised by Martha Cook's appearance in the home that he was burglarizing he tied her to the bed. She was dressed in her nightgown.

The error, if any, was rendered harmless by the prompt admonishment of the court to the jury to disregard this statement. Hunnicutt v. State, 500 S.W.2d 806, (Tex.Cr.App., 1973); Bothwell v. State, 500 S.W.2d 128, (Tex.Cr.App., 1973); Abels v. State, Tex.Cr.App., 489 S.W.2d 910.

The sixteenth ground of error is overruled.

In his last ground, appellant contends that the court erred in refusing to allow him to introduce evidence at the punishment stage of his good reputation as a peaceable, law abiding citizen in the community in which he resides, up to August 3, 1971. It was stipulated by the State and appellant that the character witnesses offered by appellant would have answered that such reputation, up to August 3, 1971, the date of the commission of the offense, was good.

At the punishment stage, the reputation of appellant as a peaceable, law abiding citizen, to the date of the trial, was in issue, and evidence on such issue was admissible. Art. 37.07, Sec. 3(a), V.A.C.C.P., provides that at the punishment stage evidence is admissible of "his general reputation, and his character . . . ." The general reputation mentioned has been construed by this Court as being his general reputation to the date of the trial. Wright v. State, Tex.Cr.App., 491 S.W.2d 936; Frison v. State, Tex.Cr.App., 473 S.W.2d 479; Ballew v. State, Tex.Cr.App., 452 S.W.2d 460; Broadway v. State, Tex.Cr.App., 418 S.W.2d 679.

The appellant apparently was unwilling to inquire of his witnesses concerning his reputation to the date of the trial. He wished to limit his question to a date long prior thereto, the date of the commission of the crime. This procedure would have been relevant on the guilt phase, as bearing on the probability or improbability of his performance of the offense. But it has no bearing on the issue of mitigation of punishment. We repeat that it is the reputation prior to and at the time of trial which is material and relevant on the matter of punishment. The seventeenth ground of error is overruled.

The judgment is affirmed.

Opinion approved by the Court.