TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00308-CR







Sean P. O'Connell, Appellant



v.



The State of Texas, Appellee






FROM THE COUNTY COURT AT LAW NO. 2 OF WILLIAMSON COUNTY


NO. 97-4624-2, HONORABLE ROBERT F. B. MORSE, JUDGE PRESIDING







A jury found appellant Sean P. O'Connell guilty of driving while intoxicated. See
Tex. Penal Code Ann. § 49.04 (West Supp. 2000). The county court at law assessed punishment
at incarceration for 180 days and a $2000 fine, but suspended imposition of sentence and placed
appellant on community supervision. Because the trial court improperly commented on the weight
of the evidence in its jury charge, we will reverse the judgment of conviction.


Factual Background


Officer Steve Shanks of the Williamson County Sheriff's Department stopped
appellant's automobile at about 2:45 a.m. on August 13, 1997, after seeing appellant make an
unlawful U-turn and change lanes several times without signaling. When the officer approached
appellant's car on foot, the windows were rolled up and appellant did not immediately
acknowledge the officer's presence. Appellant had difficulty finding the window controls and
"fumbled" while getting his driver's license. The officer had the impression that appellant was
confused or disoriented. When asked to get out of the car, appellant used the vehicle to steady
himself. The officer testified that appellant's eyes were somewhat red and glassy, and that his
speech was thick at first but became more intelligible as the encounter continued. The officer
smelled the odor of alcoholic beverage on appellant's breath.

A second officer, Larry Chambers, drove to the scene of the stop as a backup. 
Officer Chambers explained the three standardized field sobriety tests used in Texas: the
horizontal gaze nystagmus (HGN) test, the one-legged stand, and the walk-and-turn. Chambers
testified at length about the training he had received in administering the HGN test and about the
"clues" he was taught indicated intoxication. Chambers administered the HGN test on appellant
and observed all six clues: a lack of smooth pursuit in each eye, nystagmus prior to 45 degrees
in each eye, and nystagmus at maximum deviation in each eye. (1) Shanks later testified that he, too,
administered the HGN test and saw the same clues. Appellant refused both officers' requests to
perform the other field tests.

Appellant was arrested for driving while intoxicated and taken to the county jail. 
There, one hour after his arrest, he was videotaped refusing to take a breath alcohol test and
refusing to perform any other sobriety test. The videotape was offered in evidence by the State. 
Shanks acknowledged that appellant looked "pretty good" on the videotape.

Patrick Dowd, a retired experimental psychologist, testified for the defense. Dowd 
stated that he and his colleagues at the United States School of Aerospace Medicine were among
the first scientists in this country to study the effect of alcohol on horizontal gaze nystagmus. 
Briefly summarized, it was Dowd's opinion that while alcohol consumption has a discernable
effect on human eye movement, the HGN field sobriety test promulgated by the National Highway
Transportation Safety Administration (NHTSA) and taught to Texas law enforcement officers,
including the two officers who administered the test to appellant, is not a reliable indicator of
intoxication.


Judicial Notice and Instruction


In Emerson v. State, 880 S.W.2d 759, 764-68 (Tex. Crim. App. 1994), the court
of criminal appeals took judicial notice of the literature regarding the HGN test. The court
concluded that "the theory [that the consumption of alcohol has a cognizable effect on human eye
movement] underlying the HGN test is sufficiently reliable pursuant to [Texas Rule of Evidence]
702." Emerson, 880 S.W.2d at 768. The court further concluded that "the technique employed
in the HGN test, as designed and promoted by NHTSA, is reliable pursuant to Rule 702" as an
indicator of intoxication, but not as an indicator of precise blood alcohol content. See id. at 768-69. 

After bringing Emerson to the attention of the trial court, and citing Texas Rule of
Evidence 201, the State asked the trial court "to take judicial notice of the fact that the theory
underlying the horizontal gaze nystagmus test which is concluded reliable under the Texas Rules
of Criminal Evidence by the Court of Criminal Appeals." The court replied that he would do so. 
The State then asked the court "to take judicial notice of the fact that the technique employed in
the horizontal gaze nystagmus test as designed and promoted by NHTSA is reliable under the
Texas Rules of Criminal Evidence according to the Texas Court of Criminal Appeals." The court
announced, "I will take judicial notice of the technique employed in the HGN test as designed and
promoted by NHTSA and then that it's a reliable indicator of intoxication." 

The court included the following instruction in the jury charge over appellant's
objection that it was a comment on the weight of the evidence:


You are instructed that the Court has taken judicial notice of the fact that 
the underlying theory [of] the Horizontal Gaze Nystagmus (HGN) test is
sufficiently reliable. The Court has also taken judicial notice of the fact that the
technique employed in the HGN test, as designed and promoted by N.H.T.S.A.
is a reliable indicator of intoxication. You are instructed that you may, but are not
required to, accept as conclusive any fact judicially noticed.



Discussion


A trial judge must not, at any stage of the proceeding before the return of the
verdict, make any remark calculated to convey to the jury the judge's opinion of the case. See
Tex. Code Crim. Proc. Ann. art. 38.05 (West 1979). Similarly, the court must not express any
opinion as to the weight of the evidence in its charge to the jury. See Tex. Code Crim. Proc.
Ann. art. 36.14 (West Supp. 2000). 

In Russell v. State, 694 S.W.2d 207 (Tex. App.--Houston [1st Dist.] 1985), aff'd,
749 S.W.2d 77 (Tex. Crim. App. 1988), a defense expert testified that the defendant was legally
insane. This witness was the only expert to testify at the trial. The trial court later instructed the
jury, "[Y]ou are not bound by the testimony offered by a witness qualified as an expert. You may
give it the weight to which you find it is entitled and may weigh such testimony with all other
evidence offered in this case." Russell, 694 S.W.2d at 209. The court of appeals concluded that
this instruction was a comment on the weight of the evidence, citing opinions in which similar
instructions regarding expert testimony had been held improper. See id. (citing Florio v. State,
532 S.W.2d 614, 618 (Tex. Crim. App. 1976); Simmons v. State, 504 S.W.2d 465, 474 (Tex.
Crim. App. 1974); Clark v. State, 500 S.W.2d 107, 111 (Tex. Crim. App. 1973)). The court
observed, "The only defensive factual issue in the instant case was the question of insanity, and
the instruction given commented subtly but adversely on the weight of the psychologist's
testimony." Id. at 210.

The court of criminal appeals agreed. "[W]hen a judge, in his charge to the jury,
suggests that certain evidence is true or untrue, that is a comment on the weight of the evidence." 
Russell v. State, 749 S.W.2d 77, 78 (Tex. Crim. App. 1988). "[I]n determining whether an
instruction is a comment on the weight of the evidence, the courts have seen fit to assess the
probable effect of the instruction on the jury in the context in which it was given." Id. at 79. The
court concluded that the instruction, while neutral on its face, "had the obvious effect of singling
out the [expert's] testimony" and had the effect of "lead[ing] the jury to believe that there was
more question as to the credibility of [the expert] . . . than as to that of the other witnesses." Id.
at 79-80.

In Zani v. State, 758 S.W.2d 233 (Tex. Crim. App. 1988), the court addressed
issues arising from the use of hypnotically enhanced testimony. Among other things, the court
held that the trial court properly refused to give a cautionary instruction against placing undue
reliance on such testimony. See id. at 245. "Such an instruction, though seemingly neutral on
its face, has the effect nonetheless of singling out evidence and inviting jurors to pay it particular
attention." Id. Citing Zani, the court held in Matamoros v. State, 901 S.W.2d 470, 477 (Tex.
Crim. App. 1995), that an instruction concerning the reliability of DNA evidence would constitute
an impermissible comment on the weight of the evidence.

The instruction given in this cause was not neutral even on its face. Much of the
testimony at appellant's trial concerned the HGN test. The State's police witnesses testified to
their understanding of the principles underlying the test, their training in administering the test,
and their observations when the test was administered to appellant. According to these witnesses,
the test indicated that appellant was intoxicated. Appellant's expert witness vigorously challenged
the test technique employed by the officers and testified that it would not produce an accurate
indication of intoxication. The court's instruction that it had taken judicial notice that the HGN
test "is a reliable indicator of intoxication" directly contradicted the defense expert and clearly
endorsed the testimony of the State's witnesses.

As previously mentioned, the State moved for judicial notice of the reliability of
the HGN test pursuant to rule 201. See Tex. R. Evid. 201. It is clear that the court believed
itself bound by the rule both to take judicial notice and to instruct the jury as it did. See Tex. R.
Evid. 201(d), (g). 

By its terms, rule 201 only governs judicial notice of adjudicative facts. See Tex.
R. Evid. 201(a). The reliability of the HGN test is a legislative fact, not an adjudicative fact. See
Emerson, 880 S.W.2d at 764-65. Adjudicative facts are the facts of the particular case, while
legislative facts have relevance to legal reasoning and the lawmaking process. See 1 Steven
Goode, Olin Guy Wellborn III & M. Michael Sharlot, Guide to the Texas Rules of Evidence: Civil
and Criminal § 201.2, at 47-51 (Texas Practice 2d ed. 1993) (distinguishing adjudicative and
legislative facts). Because the reliability of the HGN test is a legislative rather than an
adjudicative fact, rule 201 does not apply and the trial court was not required either to take
judicial notice of or instruct the jury regarding the reliability of the test. See id. at 51.

We hold that the county court at law erroneously commented on the weight of the
evidence when he instructed the jury on the reliability of the HGN test. Having been told the
court's view of the reliability of this evidence, the jury was unlikely to reach a contrary
conclusion. The court's instruction was calculated to injure appellant's rights and the harm is
obvious. See Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). 
Because we sustain appellant's third issue, we do not reach the other issues. See Tex. R. App.
P. 47.1. 

The judgment of conviction is reversed and the cause is remanded to the county
court at law for a new trial.



 


 Lee Yeakel, Justice

Before Justices Jones, Yeakel and Patterson

Reversed and Remanded

Filed: April 27, 2000

Publish
1. Nystagmus is a rhythmic oscillation of the eyes in a horizontal, vertical, or rotary direction. 
See Emerson v. State, 880 S.W.2d 759, 765 (Tex. Crim. App. 1994). Horizontal gaze nystagmus
is a variety of nystagmus that occurs when an individual's eyes are deviated to the lateral extreme.
See id. 



nt on the weight of the evidence." 
Russell v. State, 749 S.W.2d 77, 78 (Tex. Crim. App. 1988). "[I]n determining whether an
instruction is a comment on the weight of the evidence, the courts have seen fit to assess the
probable effect of the instruction on the jury in the context in which it was given." Id. at 79. The
court concluded that the instruction, while neutral on its face, "had the obvious effect of singling
out the [expert's] testimony" and had the effect of "lead[ing] the jury to believe that there was
more question as to the credibility of [the expert] . . . than as to that of the other witnesses." Id.
at 79-80.

In Zani v. State, 758 S.W.2d 233 (Tex. Crim. App. 1988), the court addressed
issues arising from the use of hypnotically enhanced testimony. Among other things, the court
held that the trial court properly refused to give a cautionary instruction against placing undue
reliance on such testimony. See id. at 245. "Such an instruction, though seemingly neutral on
its face, has the effect none